|     |     |
|-----|-----|
| 3   | 467 |
| 134 | 511 |

## CAMPBELL *v.* THE COUNTY OF POLK.

Where one of the errors assigned in a cause was as follows: "In overruling the motion of defendant, to quash the original notice," and where the bill of exceptions stated the reason for the motion to quash, as follows: "for the reason that the notice was not directed to the defendant. The notice reads as follows, to wit: (here insert;") and where the motion was not copied either into the bill of exceptions, or the transcript; *Held*, That this manner of referring to a paper in a cause was bad; and that the Supreme Court would not consider the error assigned thereon.

The case of *Brown* v. *The Board of Commissioners of Johnson County*, 1 G. Greene, 486, so far as it holds that a county warrant, drawn payable "out of any money in the treasury not otherwise appropriated," is not due until the fund is created, and judgment cannot be rendered upon such warrant, unless that fact is averred and established, overruled.

A warrant on a county treasurer, which provides that the sum therein named, is to be paid "out of any money not otherwise appropriated," is payable unconditionally; and if there is no money in the treasury, the county is liable.

The words "out of any money not otherwise appropriated," in a county warrant, mean that the warrant is not to be paid out of the school fund, road fund, or funds created for a special purpose.

The county judge is to be regarded as possessed of two distinct characters— the one, as the "general agent," of the county, and the other as judge.

The auditing a claim against the county, by the county judge, is a judicial act, in so far as an appeal will lie; but drawing a warrant upon the county treasurer, is a ministerial act.

Where in an action on three county warrants, the county pleaded that the warrants were issued without consideration, and set out facts showing that the warrants were issued through mistake, which plea was demurred to, on the

ground that nothing but fraud could be set up against the warrant; that defendant cannot go behind the warrants, and inquire into the consideration, and re-investigate the subject matter then acted upon and settled between the parties; and that when the county judge had once passed upon a matter within his jurisdiction, that action was final, unless appealed from, or impeached for fraud, which demurrer was sustained; *Held*, That the court erred in sustaining the demurrer.

*Appeal from the Story District Court.*

THIS is an action brought upon five county warrants, each of which is of the following tenor: " Office of County Judge, $300.

" POLK COUNTY, IOWA, June 14th, 1855.

" The treasurer of said county will pay to James Campbell, or bearer, the sum of three hundred dollars, out of any money not otherwise appropriated." They are signed by the county judge, and sealed with the seal of the county. On each is the following indorsement: "Presented, and refused to pay by the treasurer, June 15th, 1855," which is signed by the treasurer.

The defendant pleaded: 1st. That the warrants were obtained by fraud and misrepresentation; 2d. That they were issued without any consideration given. The answer states the facts to be (in substance), that the warrants were given as part of the price of a certain parcel of land, contiguous to the former town of Fort Des Moines, in Polk county, which had formerly been laid out into lots by the county commissioners, and made a part of the town; that, however, the said commissioners, in or about the year 1848, purchased the land of Campbell & McMullen, *and paid the consideration money;* but that for some reason no title was then made, but the vendors were, and remained liable to make the title, and that the county judge (who is the successor to the board of commissioners), seeking to perfect the title in the county, which had treated the land as its own and sold lots, and being ignorant of the fact that the purchase money had been paid, (the original consideration being three hundred dollars), is-

sued to the two vendors, warrants to the amount of fifteen hundred dollars each.

The plaintiff demurred to the second defence above-named, and the court sustained the demurrer.   On the first defence —that of fraud—issue was joined, a trial had, and a verdict rendered for the plaintiff for the full amount.

The ground of demurrer to the defence of want of consideration, is that nothing but fraud can be set up against the warrants; that defendant cannot go behind the warrants, and inquire into the consideration, and investigate the subject matter then acted upon and settled between the parties; and that when the county judge has once passed upon a matter within his jurisdiction, that action is final, unless appealed from, or impeached for fraud.   The court sustained the demurrer, and refused to permit the defendant to enter into the question of want of consideration.   The defendant appeals, and the errors assigned are : ·

1. In overruling the motion of defendant to quash the original notice.

2. In sustaining the plaintiff's demurrer to the defendant's answer.

3. That plaintiff sets forth no cause of action in his petition, and that judgment was rendered for the plaintiff, when by law it should have been for the defendant.

*B. Granger, W. W. Williamson,* and *J. Parish,* for the appellant.

*Curtis Bates,* for the appellee.

WOODWARD, J.—The first error is upon overruling the motion to quash the original notice.   A bill of exceptions is taken to this matter, which says the motion was "for the reason, that the notice was not directed to defendant.   The notice reads as follows, to wit: (Here insert)," but there is no such motion among the papers; and if there was, such a mode of referring to it, is bad.   We shall therefore pass this assignment, and we do it the more readily, because it appears that the defendant was represented by counsel.

The second and third assignments must be considered together. The plaintiff's demurrer to the defendant's answer, opens to the question of the sufficiency of the plaintiff's petition and ground of action, and the defendant makes the question.

First, he says, that neither the commissioners nor the county judge, had authority to buy land, to expend the county funds in such a manner. Sufficient does not appear on the papers, under the demurrer, to raise this question properly, for it is stated only, that the land was purchased, and possession taken; and that it was laid out into town lots, and a part of them were sold. Now, it does not appear that it was not purchased to provide for a court-house, a jail, or other proper public buildings, or for some other legitimate purpose; nor that it may not, in fact, have been taken in payment of a debt due from the vendors. And the court will not *presume* it to have been obtained for an unlawful purpose, nor in an unlawful manner. We do not intend to intimate an opinion as to the authority, under any other supposed circumstances, but to say only that the point cannot be well made at present.

The second point here made by the defendant is, that the action does not lie, without an averment that there are funds in the county treasury not otherwise appropriated. That an action may be maintained against a county, on its orders, drafts, or warrants, drawn on the treasurer, without going back to the original consideration, is settled by the cases of *Brown* v. *Board of Commissioners of Johnson County*, 1 G. Greene, 486, and *Steel* v. *Davis County*, 2 Ib. 369. In this part of those decisions we concur, for the practice is convenient, and whatever technical objections to it might exist, on account of the precise nature of the instrument, they are obviated by our statutes relating to instruments and actions. But the objection is based upon the case of *Brown* v. *Commissioners of Johnson County*, in which a warrant, drawn payable " out of any money in the county treasury, not otherwise appropriated," is assumed to be drawn upon an uncertain fund, which must be alleged and proven to exist. We

are disposed to differ from the opinion of the majority of the court in the above case. Upon this question, that opinion is exceedingly brief. There is no argument, no reasoning. The point is simply assumed. GREEN, J., dissents, and in his opinion expresses the truer reasoning.

We are perfectly sensible of the importance of the idea of overruling former decisions, but in the present instance, this responsibility is alleviated by the fact of a dissenting opinion in the foregoing cause, and the brevity, and want of reasoning and authority, in the opinion of the majority, and by the consideration that no settled interests or titles will be disturbed by the change.

In a warrant payable like these, from any money not otherwise appropriated, what do the words, "not otherwise appriated," mean? There is reason to doubt whether they mean anything. There is no mode in which the county judge appropriates the money of the county, other than by drawing warrants on the treasurer. The statute, (Code, § 454,) allows a tax for schools and for roads within certain amounts, and sometimes for special purposes. These funds may, in some sense, be said to be appropriated. But there may be, and there is, levied a tax for "ordinary county revenue." This, as the terms imply, is to meet the ordinary and miscellaneous demands upon the county. The most that the above language in the warrants can mean, is that they are not to be paid from those, or similar *special* funds. It might be said, truly enough, that when payable from the general resources of the county, the warrant may be drawn without such words or qualification. This is true enough; and yet what effect has the addition of those words, but to *express* the idea that they are *not* to be paid from those special funds?

Then the only question is, whether the creditor of the county should be held to aver and show that there is money in the treasury; and it is as clear to us as any proposition can be, that he should not be held to this. He is obliged to have his claim settled by the county judge; the judge cannot pay the money, but is obliged to draw a war-

rant on the treasurer for it. Now is there any reason or jus-tice in saying, that the creditor must allege and prove funds to be in the treasury, because he took a warrant, or because he took *such* an one? Upon a refusal to pay, he might re-turn the warrant and sue on the original consideration, and then he would be relieved from that responsibility. In the opinion of this court, these warrants were payable uncondi-tionally, and if there was no money in the treasury, the county is answerable. All considerations of justice and of good law, require this decision.

The next question is, whether the District Court was cor-rect in sustaining the demurrer to that part of the answer—or to that defence—which alleges a want of consideration, and in refusing to permit the defendant to show this? The ground taken in the demurrer is, that the action of the county judge is an *adjudication* ; that it is final, unless an appeal is taken; and that it cannot be reached in this manner. The argument is, that it is the *settling of a demand*, and that it is a *judicial* act, and is to be treated as such. This, also, is the view—and the only one—in which it is discussed in the ar-guments on both sides. Therefore, we shall consider it un-der the same point of view, assuming that this was the ground upon which the court decided the demurrer.

We are constrained to differ from the opinion of the Dis-trict Court. It seems impossible to avoid viewing the county judge as possessed of two distinct characters—the one, as the " general agent" of the county, and the other, as a *judge*. It may be difficult to define the limits of the two, and cases may arise in which it will be difficult to discriminate, but this af-fords no argument against the distinction in cases which are clear. The statute seems to give countenance, on its face, to the thought that the judge acts in these two capacities, by the division of chapter 15 of the Code, when at section 125, it professes to treat of him " as a county court." But the main argument lies in the nature of the case. It is true that the character and the duties may often intermingle ; and it is true that the county *court* is to be considered in law as al-ways open. But there are cases in which we cannot con-

sider him as acting in a judicial capacity, but must view him as an *agent*—as one appointed to attend to the interests of the county, and to do its business—cases in which he is merely a business man. Such will arise under section 105 of the Code, by which he is empowered to "take the management of all county business, and the care and custody of all the county property;" is required to keep certain books; is authorized to institute and prosecute actions for the benefit of the county, and to superintend its fiscal concerns, and secure their management in the best manner; to keep and publish an account of the receipts and expenditures; and to provide rooms, books, stationery, and furniture, for the county offices, &c. Some of these acts are purely ministerial, whilst others are at least, *not judicial.*

The auditing a claim is judicial, in so far as an appeal lies, but drawing a warrant, is ministerial. And neither the buying a piece of land, nor the agreeing upon the price, is a judicial act. In such a transaction, the parties must stand as equals. If the act is judicial as against one side, it must be against the other also. The judge's refusal to purchase, becomes judicial decision, and as it affects private interests, the proposed vendor may appeal; and carrying out the logic, if the judge offers to give a less sum than is asked, it is a judicial decision, and the vendor is bound to comply, unless he appeal. This seems strange, but is it not the natural consequence of regarding *all* acts of the county judge as judicial? If he is *judge always*, there can be no such thing as negotiation.

In truth, it is necessary to regard him sometimes as an agent only, or as we would any other man transacting business. If a county judge causes a fence to be built about its court-house grounds, and trees to be set out, it is not done judicially, nor is agreeing upon the price. But the same matter may assume a judicial character partly. Thus, if the judge refuses to pay the price agreed, or to allow a reasonable compensation, when none was agreed upon, the demand may be presented in such form and manner as to allow an appeal. Contracting for the building of a court-house, or

jail, is not a judicial act; and if warrants are drawn in advance of the work contracted for, and then it is not done, would it be contended that payment of the warrants may not be refused; and if a succeeding judge, through ignorance of the facts, or mistake, issues new warrants for the same work, may it not be shown that the work had already been paid for, and that the second warrants are without consideration? It seems manifestly necessary to discriminate between the acts of this officer; otherwise many who suppose they are negotiating a business transaction with him, may find themselves bound up by a judicial decision. It will not be practicable to regard the same transaction at one moment, or on one side, as a business one; and in the next moment, or on the other side, as a judicial proceeding.

It is not made to appear in what *manner* this matter was presented to, or came before the county judge, and no question is made upon this, in the case. It is the opinion of the court that the defence should have been admitted to proof, and that the court erred in sustaining the demurrer.

The judgment is reversed, and the cause remanded for further proceedings.