AT the same time was adjudged—it having been previously argued by *Mr. C. H. Hill, Assistant Attorney-General, for the United States, and by Mr. James Hughes, contra*—the case of the

UNITED STATES *v.* SPICER,

the facts of which were very similar to those of Smoot's case, above reported.   Judgment had been given below in favor of Spicer.   The court now announced that the principles set forth in Smoot's case, which they had just decided, must govern Spicer's case also.   The judgment in it was accordingly reversed, with directions to the Court of Claims to render judgment

IN FAVOR OF THE UNITED STATES.

### KEARNEY *v.* DENN.

1. A suit was brought in a Circuit Court; properly as regarded the citizenship of the parties.   The defendant died, and his representatives were made defendants; nothing being said as to their citizenship.   On motion to dismiss because the plaintiff and defendants were citizens of the same State, the Circuit Court refused the motion, but on what ground did not appear; the record not showing whether any evidence had been taken on the matter, and recording only that the defendants "reserved their exception to the decision of the court."   *Held*, that as the record stood, there was no case that this court could examine.

2. A judgment of an Orphans' Court of Maryland (affirmed in the Court of Appeals), passing directly on the legitimacy of a son who was applying

for administration to his father's estate, *held* to be inadmissible to show the illegitimacy of his sisters by the same connection, though the judgment was entered only after an issue directed to ascertain whether the father was *ever* lawfully married to the admitted mother of the children, either before or subsequently to the birth of the son, and after a verdict in the negative.

ERROR to the Circuit Court for the District of Maryland; the case being thus:

Dr. David Crawford, of Prince George's County, Maryland, died there in 1859, a bachelor, leaving a large personal and real estate, but neither father or mother, brother or sister, or the descendants of either to inherit it. A first cousin named Blackburne, who was in possession of his realty, applied for administration on the personalty. A counter application was made by one George T. Crawford, of Maryland, son of Thomas B. Crawford, a brother of the intestate, who had died before him. The application of George T. Crawford was opposed by Blackburne, on the ground that he, the said George, was not a legitimate child of the said Thomas; but with three other children, his illegitimate offspring from a connection with one Elizabeth Taylor.

Thereupon the Orphans' Court of Prince George's County, where the application of both parties was made and the contest was pending, directed an issue to settle the question,

"Whether the said Thomas was *ever* lawfully married to Elizabeth Taylor, either before or after the birth of the said George."

The jury found a verdict against the legitimacy; and judgment was entered accordingly; a judgment afterwards affirmed in the Court of Appeals of Maryland.

In this state of things George T. Crawford, who had lost the administration, and his three sisters, *all of Maryland*, brought ejectment in the court below against Blackburne for the real estate. On that trial Blackburne offered in evidence as proof of the illegitimacy of the plaintiffs, a transcript of the record of the Orphans' Court of Prince George's County,

on the application for administration, and the Circuit Court rejected it. Verdict and judgment having been given for the Crawfords, the defendant, Blackburne, brought the case here on error,* where the ruling was declared to have been in part errroneous. This court then said:

"The transcript was competent evidence against George T. Crawford. As to him it was an estoppel and barred his right of action. But it did not affect the other defendants in error, who were not parties to the proceedings."

The judgment was accordingly reversed, and a *venire de novo* ordered.

George T. Crawford, one of the plaintiffs, now *died.* He had children, but they were not made parties to the case; which went on in the names of the other plaintiffs. After some continuances and before the case came on to be retried, the attorneys of the plaintiffs suggested to the court, that since the last continuance, Blackburne, the defendant, had died, and they, therefore, moved for leave, which was granted, to let new parties, to wit, Mary Kearney, and J. L. Henry, and Kate Kearney Henry, his wife (*nothing being said about their citizenship*), appear and defend; these three persons, as was admitted by an agreement of counsel on both sides, filed, being "alone interested as defendants;" and it being further agreed by the counsel that "the original pleadings shall stand *mutatis mutandis.*"

The cause was then continued till the next term, when the defendants filed a motion in writing to dismiss the case, for the reason that Mary Kearney was, at the time of the commencement of the suit, and had been ever since, a resident and citizen of the District of Columbia, and that J. L. Henry, and Kate Kearney Henry, his wife, had been during the same period, citizens and residents of the State of Maryland, and that the court had, therefore, no jurisdiction to hear and decide the cause. No proof appeared to have been offered of these facts. The court overruled the motion, but

---

* Blackburne *v.* Crawfords, 3 Wallace, 190.

upon what ground did not appear. It was noted on the record that the defendants "reserve their exception to the decision of the court." This was all that the record contains on the matter.

The cause was then afterwards tried on its merits, when the defendants offered a transcript of the record of the Orphans' Court to show the illegitimacy of all the new plaintiffs, the sisters of George T. Crawford as well as of himself The court below refused to receive it, and the defendants excepted. Verdict and judgment having again gone for the plaintiffs the defendants brought the case here, the two questions now being,

1st. Had the court below jurisdiction; in other words was the suit after the substitution of the new defendants an original suit, or merely a continuation of the old one?

2d. Was the rejection of the transcript of the record of the Orphans' Court, which had been offered to show the illegitimacy of the now plaintiffs, the sisters of George T. Crawford, rightly rejected?

*Mr. T. J. Durant, for the plaintiff in error; a brief of the late Mr. William Schley having been filed:*

1. The new defendants, when they appeared to the suit, did not come in *under* Blackburne, as successors to his rights; but came in professing to be next of kin and heirs of the intestate, Dr. David Crawford. In some senses it was a right *adverse* to Blackburne's.

Now if, on the day when these new defendants appeared to this suit, an original suit had been begun against them by the plaintiffs in that suit, the Circuit Court would have had no jurisdiction; because all the plaintiffs and two of the defendants are citizens of Maryland, and the other defendant is a citizen of the District of Columbia.

But the court below disposed of the motion by the remark, that the question of jurisdiction related to the state of case which existed at the commencement of the suit. This supposed rule, however, is not sanctioned by the decisions of this court; it is qualified by the condition that the parties

remain the same.   Subsequent change of domicile does not, *per se*, take away jurisdiction rightfully acquired.*

2. The transcript of the record of the Orphans' Court should have been admitted, for the sisters of G. T. Crawford were virtually parties to the suit in the Orphans' Court in which he claimed the administration.   The same *right* was in question in the two cases.

In addition, the verdict and judgment in the record offered in evidence was directly upon the *status* of the immediate ancestor of all the plaintiffs in this suit.

*Messrs. T. T. Crittenden (with whom had been the late Mr. R. J. Brent) and D. Clarke, contra.*

Mr. Justice SWAYNE recapitulated certain parts of the case and delivered the opinion of the court.

In this case our attention has been called to two alleged errors :

I.  That the court below overruled the motion of the plaintiffs in error to dismiss the suit.

After the case was remanded from this court to the Circuit Court, the plaintiffs' lessors appeared in that court and suggested the death of Richard S. Blackburne, the original defendant, and prayed leave to make new defendants.   Leave was given accordingly.   This was done on the first Monday of April, 1868, and the cause was thereupon continued to the first Monday of November following.   On the latter day a written agreement, signed by William Schley, Esq., as the counsel for the plaintiffs in error, and by R. J. Brent, Esq., as the counsel for the lessors of the plaintiffs, was filed in court.   It was to the effect that the death of the defendant, Blackburne, having been suggested, and the plaintiffs in error (naming them) being interested on the part of the defendant, Blackburne, in the property mentioned in the declaration, the clerk was requested to enter their appearance by Mr. Schley, as their attorney, " they being alone interested

---

* Conolly v. Taylor, 2 Peters, 565.

as defendants in said property." A further agreement was signed and filed by the same counsel " that the original pleadings shall stand *mutatis mutandis.*" The case was thereupon further continued to the first Monday of April, 1869, when it was again continued to the first Monday of November following. On that day the plaintiffs in error appeared by their counsel and filed a motion in writing to dismiss the case, for the reason that Mary Kearney was, at the time of the commencement of the suit, and had been ever since, a resident and citizen of the District of Columbia, and that J. L. Henry, and Kate Kearney Henry, his wife, had been during the same period, citizens and residents of the State of Maryland, and that the court had, therefore, no jurisdiction to hear and decide the cause. The court overruled the motion, but upon what ground does not appear. It is noted on the record that the plaintiffs in error " reserve their exception to the decision of the court." This is all that the record contains touching the motion. For aught that appears to the contrary, the court may have overruled it, because the facts of the residence of the defendants as stated in the motion were not proved, or because it was proved that they resided in a State or States other than Maryland. Error must be shown. It is never presumed. We cannot take cognizance of the exception reserved upon the record, any more than we could of an exception noted in like manner to the admission of improper testimony or misdirection by the judge to the jury, in the trial of a cause. In order to bring the facts properly before us a bill of exception, setting forth what was proved and the decision of the court, should have been taken. As the record stands we cannot examine the subject. We have, therefore, not had occasion to consider the learned arguments submitted by the counsel of the respective parties upon the merits of the motion.

We are all of the opinion that the introduction of the new defendants was an *elongation of the original action,* and not the institution of a new suit.

II. The second alleged error relates to the transcript of the record in the Orphans' Court of Prince George's County.

It appeared by the transcript that Blackburne, as the next of kin to Thomas B. Crawford, deceased, applied to the court for letters of administration upon the estate of the decedent.   George T. Crawford, claiming to be the son of the deceased, made a like application.   The court ordered to be tried an issue involving the question whether Thomas B. Crawford and Elizabeth Taylor, the mother of George T. Crawford, were ever lawfully married.   The jury found in the negative, and judgment was entered accordingly.   The case was removed to the Court of Appeals of the State, and that court affirmed the judgment.   When this case, as it is now before us, was tried in the court below, George T. Crawford had died, and his children were not made parties to the suit.   Upon the trial the plaintiffs in error offered the transcript in evidence as bearing upon the question of the marriage of Elizabeth Taylor and the legitimacy of her other children.   The court excluded it from going to the jury, and the plaintiffs in error excepted.

The effect of the verdict and judgment here in question were fully considered when this case was formerly before us. We then held that they were an estoppel as to George T. Crawford and barred his right of action, but that they did not in anywise affect the rights of the other children, because they were not parties to the proceeding.*   We have no doubt of the soundness of these conclusions, and we feel no disposition to review or reverse them.   It is unnecessary to pursue the subject further.   No error was committed in rejecting the transcript.

JUDGMENT AFFIRMED.

---

* Blackburne *v.* Crawford, 3 Wallace, 190.