## John Richardson *vs.* Edward S. Rowland.

Whether the law of maintenance and champerty is recognized as a part of the common law of this state: *Quære.* The court inclines to think it is not.

It is not a part of the common law of the state of New York.

The defendant, thinking it necessary, in securing the benefit of certain real estate which he had attached in the state of New York, to pay off a mortgage of $2,000 upon the property, proposed to the plaintiff that if he would advance the sum required and superintend the litigation, paying his own expenses, he would give him half the net avails of the suit, but that if nothing was recovered the expenses of the litigation should be shared equally. The plaintiff accepted the proposition, went twice to the state of New York with the money, paying his own expenses, and consulted the attorney in charge of the suit, who concluded that it was not necessary to raise the mortgage, soon after which the defence of the suit was abandoned, judgment rendered in favor of the present defendant and the amount of the judgment paid over to him. Held, in a suit brought to recover half of the net avails of the judgment—1. That as the contract was to be performed in the state of New York, it was governed by the law of that state. 2. That it was not void by the law of that state as a champertous contract. 3. That the plaintiff was to be regarded as having sufficiently performed his part of the contract, its literal performance having been excused.

Assumpsit for money had and received and work and labor done; brought to the Superior Court in New Haven County. The following facts were reported by an auditor.

In July, 1858, the defendant owned a claim for money against one Sturges, which he had put in suit by attaching certain property in Brooklyn, in the state of New York, in which he claimed that Sturges had a valuable interest; which interest other parties disputed.

There was a mortgage for $2,000 on this property, which the defendant was advised it was necessary for the success of his suit to raise.

In view of this necessity the defendant proposed to the plaintiff that if he would advance the sum required to raise the mortgage, and generally superintend the litigation, paying his personal expenses, the defendant would pay to him one-half of the net avails of the suit; but if nothing should be

recovered, the expenses of the litigation to be shared equally. This proposition was accepted by the plaintiff.

Thereupon the plaintiff went to Brooklyn twice, with the sum necessary to raise the mortgage, and consulted the attorney in charge of the suit, paying his own traveling expenses. But the attorney did not on either occasion deem it necessary to raise the mortgage, and not long afterward the defence of the suit was substantially abandoned, and judgment was recovered, and about the first day of October, 1858, the defendant received, as the net avails of the suit, the sum of $468.53, no part of which has been paid to the plaintiff.

The plaintiff was at all times ready to pay the sum required to raise the mortgage, and to do anything else that might be necessary by way of managing the suit; but owing to the settlement, nothing further was in fact done by or required of him than to make the two journeys to Brooklyn, with the money which he had raised for the purpose, paying his personal expenses, and to hold the necessary consultations on those occasions with the attorney in Brooklyn.

If upon these facts the law should be so that the defendant was bound to pay to the plaintiff one-half of the net avails thus received, then the auditor found that the defendant was indebted to the plaintiff upon that account in the sum of $234.27, for money had and received for the plaintiff's use, October 1, 1858, with interest from that date. If otherwise, that the defendant was not indebted to the plaintiff upon that account.

There were other items in the accounts of the parties entering into the final result, about which no question was made.

Upon these facts the case was reserved for the advice of this court.

*E. K. Foster* and *Alling*, for the plaintiff.

1. The plaintiff performed his part of the contract and earned the stipulated compensation, and should receive it. *Lincoln* v. *Mc Clatchie*, 36 Conn., 136. If there was any slight variation in the performance, it was with the consent of the defendant, and does not affect the right to the contract price.

Richardson v. Rowland.

*Ellis* v. *Willard*, 9 N. York, 529; *Whitney* v. *Brooklyn*, 5 Conn., 415; *Champion* v. *Hartshorne*, 9 id., 569; *Smith* v. *Lewis*, 24 id., 624.

2. The contract was not invalid on account of champerty or maintenance. In this state, ever since the year 1809, champerty and maintenance have been regulated by statute. Nothing appears in our previous laws on that subject. The first statute applied only to attorneys, sheriffs, deputy sheriffs and constables; and, as at first passed, had no pecuniary forfeiture or penalty, but vitiated the champertous contract. So the law remained until 1849, when only a pecuniary penalty was imposed, and nothing is said about the validity of the contract; but the statute was restricted to attorneys, sheriffs, deputy sheriffs and constables, and thus the law remains to this day. The English common law of maintenance and champerty is entirely inapplicable to this country, and works practical injustice wherever applied. It has not been generally adopted in the United States, and was never the common law of this state. *Sherley* v. *Riggs*, 11 Humph., 53; *Bayard* v. *McLane*, 3 Harr., 139, 209; *Danforth* v. *Streeter*, 28 Verm., 490; *Wright* v. *Meek*, 3 Iowa, 472. The state of society which led to the adoption of the law of maintenance and champerty as matter of public policy, is forcibly delineated in the cases of *Bayard* v. *McLane*, *Wright* v. *Meek*, supra, and *Sedgwick* v. *Stanton*, 14 N. York, 289. At least since the statute of 1809, the English common law of champerty and maintenance has not been the law of this state. It was so considered in *Stoddard* v. *Mix*, 14 Conn., 24. To this result the New York courts have come, as to the law of that state, on legislation similar to that of this state. *Sedgwick* v. *Stanton*, 14 N. York, 289.

3. The record does not clearly disclose where the contract was made, but does clearly show that it was to be performed in the state of New York. The suit was then pending in the courts of that state against a resident of the state, who would, if any body, be the party to be protected by the law of champerty and maintenance. The property attached was in New York, and the money to be raised was to be paid out in New

York, in redemption of a mortgage on the attached property. The validity of the contract is to be determined by the law of the place of performance. *Burrell* v. *Root*, 40 N. York, 496 ; *Everett* v. *Vendryes*, 19 id., 436 ; *Carnegie* v. *Morrison*, 2 Met., 397 ; *Penobscot & Kennebec R. R. Co.* v. *Bartlett*, 12 Gray, 244 ; *Giddings* v. *Eastman*, 1 Clark Ch., 19 ; *Thurston* v. *Percival*, 1 Pick., 417 ; *Commonwealth of Kentucky* v. *Bassford*, 6 Hill, 526. The common law of maintenance and champerty, so far as applicable to this contract, had ceased to exist long before the making of this contract in the state of New York. *Sedgwick* v. *Stanton*, 14 N. York, 289 ; *Durgin* v. *Ireland*, id., 322 ; *Voorhees* v. *Dorr*, 51 Barb., 580.

*Bronson*, for the defendant.

1. The contract under which the plaintiff seeks to recover is void for maintenance and champerty. The contract was made and was to be performed in this state, and is to be construed according to the laws of this state. The facts show both maintenance and champerty. Champerty is the " unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute." 1 Hawkins P. C., ch. 84, § 1. It is a crime at common law, and in the absence of any statute the law in respect to it is in force in this state. *State* v. *Danforth*, 3 Conn., 114 ; *Wallis* v. *Duke of Portland*, 3 Ves., 502 ; *Thurston* v. *Percival*, 1 Pick., 415 ; *Lathrop* v. *Amherst Bank*, 9 Met., 490 ; *Martin* v. *Clark*, 8 R. Isl., 389 ; *Gregerson* v. *Imlay*, 4 Blatchf., 503 ; 1 Hawkins P. C., ch. 83, § 36. That the money was to be furnished to sustain a suit in the state of New York does not alter the case. For the crime is *malum in se*, and no reason can be shown which confines it to the maintenance of a suit in this state. The reason of the law does not admit of such a restricted meaning; acts of maintenance and champerty being prohibited because they tend to oppression and the stirring up of strife. Unless the contrary is shown, it is to be presumed that the common law in regard to maintenance and champerty is in force in the state of New York. *Thurston* v. *Percival*, 1 Pick., 415.

2. The whole reason and object of the proposition of the defendant to the plaintiff was the necessity of paying off the mortgage. " In view of this necessity," the finding says. It is evident that the money part of the proposition was the important part of it, and that, however valuable might be the " general superintendence " of the plaintiff, the main object of the defendant was to raise the mortgage, and the main duty of the plaintiff to furnish the money. It is evident, too, that the contract has not been fully performed. Carrying the money to New York twice is not an advancement of the sum required. · Going to New York twice and being informed by the attorney that nothing is needed from him is a *willingness to perform* and not a *performance*. It will probably be conceded that the plaintiff cannot recover upon this *part performance* of the contract, unless he has been prevented from completing the same by the defendant, or unless complete performance has been waived. Neither of these facts is however found, and it is not the office of this court to supply them by inference.

3. If this court, however, finds that full performance has been waived by the defendant or been prevented by him, then we say that the rule of damages is the worth of the services actually performed by the plaintiff. An offer to perform is equivalent to performance for the purpose of sustaining an action, but it does not regulate the amount of damages. Compensation for actual loss is the controlling principle. Sedgwick on Damages, 211 ; *Shannon* v. *Comstock*, 21 Wend., 457; *Jones* v. *Van Patten*, 3 Ind., 107 ; *Clark* v. *Marsiglia*, 1 Denio, 317 ; *Hecksher* v. *McCrea*, 24 Wend., 304 ; *Cunningham* v. *Dorsey*, 6 Cal., 19 ; *Allen* v. *Jarvis*, 20 Conn., 38 ; *Perry* v. *Simpson Waterproof Manf. Co.*, 37 id., 520. In this case the money which the plaintiff was to lend was retained by him, and he, instead of the defendant, had the benefit of it ; and the time which he was to use in the service of the defendant, he had for his own affairs. How then can it be claimed that he is entitled to the recompense of a full and complete performance ? It will, however, be observed here that the plaintiff has not brought his action on the contract directly. If

we assume that full performance on the plaintiff's part has been waived and the contract rescinded by mutual consent, then he could not do otherwise than he has done; if we assume that the defendant prevented the plaintiff from performance, then the plaintiff had his choice of remedies, by suing on the contract or in general assumpsit.  The rule of damages is however different, and, inasmuch as general assumpsit has been brought, can be nothing else than *a reasonable compensation for the work actually performed.*  Sedgwick on Damages, 223 ; *Chamberlin* v. *Scott*, 33 Verm., 80 ; *Merrill* v. *Ithaca & Oswego R. R. Co.*, 16 Wend., 586 ; *Clark* v. *Mayor &c. of N. York*, 4 Comst., 338.

FOSTER, J.  The only point presented by the finding for our consideration is, whether the plaintiff is entitled, upon the facts found, to recover one-half of the sum of $468.53, the amount received by the defendant as the net avails of his suit against Sturges.  The plaintiff claims one-half of this sum under a contract with the defendant by which he was to render him certain services in connection with the suit and receive half the net amount recovered ; the defendant resists the demand, claiming that the contract is void for maintenance and champerty.

Maintenance at common law signifies an unlawful taking in hand or upholding of quarrels, or sides, to the disturbance or hindrance of common right.  The maintaining of one side, in consideration of some bargain to have part of the thing in dispute, is called champerty.  Champerty therefore is a species of maintenance.

Maintenance was an offence at common law, and divers statutes have been passed in England by Parliament regarding it, commencing as early as the reign of Edward I.  The reasons upon which the ancient doctrine rested in England can now scarcely be said to exist, and the law has, at times, been regarded with disfavor.  As long ago as 1791, Mr. Justice BULLER, in the case of *Masters* v. *Miller*, 4 T. R., 340, speaks of a particular application of the law of maintenance almost in the language of contempt.  Our statute against

unlawful maintenance, first passed in 1809, forbade certain officers of the law, attorneys and counselors, sheriffs, deputy sheriffs and constables, from buying any bond, bill, promissory writing, book debt, or other chose in action, under certain penalties. As modified in 1848, and as the law now stands in our statutes, if either of the above named officers shall, with intent to make gain by the fees of collection, purchase any chose in action, and commence a suit upon the same, he shall forfeit a sum not exceeding $100.

As the plaintiff is not one of the officers named in our statute, that statute is not interposed by the defendant in the way of a recovery; the common law is the law relied on.

We are not aware of any case where the law of maintenance and champerty has been considered and passed upon by this court. It is alluded to by CHURCH, J., in giving the opinion of the court in the case of *Stoddard* v. *Mix*, 14 Conn., 23, 24, and by ELLSWORTH, J., in *Bridgeport Bank* v. *New York & N. Haven R. R. Co.*, 30 Conn., 273.

Some of our sister states have adopted the common law on this subject and some have not. Massachusetts and Rhode Island recognize the rule of the common law. *Thurston* v. *Percival*, 1 Pick., 415; *Lathrop* v. *Amherst Bank*, 9 Met., 489; *Martin* v. *Clark*, 8 R. Isl., 389. Among the states which discard the rule, are Vermont, Delaware, Tennessee and Iowa. *Danforth* v. *Streeter*, 28 Verm., 490; *Bayard* v. *Mc-Lane*, 3 Harrington, 139, 209; *Therley* v. *Riggs*, 11 Humph., 53; *Wright* v. *Meek*, 3 Iowa, 472.

There are such broad distinctions in the state of society between Great Britain and this country, that the reasons which make a law against maintenance and champerty salutary or necessary there, do not exist here; certainly not to the same extent. Mr. Justice GRIER, in giving the opinion of the court in *Roberts* v. *Cook*, 20 How., 467, says that the ancient English doctrines respecting maintenance or champerty have not found favor in the United States. The enforcement of the law here would not always, perhaps not generally, promote justice. Mr. Chief Justice PARKER, in giving the opinion of the court in *Thurston* v. *Percival*, 1 Pick., 417, says, " It sometimes

may be useful and convenient, where one has a just demand which he is not able from poverty to enforce, that a more fortunate friend should assist him, and wait for his compensation until the suit is determined, and be paid out of the fruits of it."

The contract between these parties, however, was in regard to a suit pending in the state of New York; the property attached was there situate; the services to be performed were to be performed there; and the money to be recovered, if recovered at all, was there to be recovered. The contract in short was to be performed in the state of New York. The law of New York therefore must necessarily govern the contract. *Commonwealth of Kentucky* v. *Bassford*, 6 Hill, 526. It becomes quite unnecessary to decide what the law of Connecticut, or of other states, may be on the subject of champerty and maintenance.

The law of New York upon this subject is very clearly and explicitly laid down by the Court of Appeals of that state in the case of *Stanton* v. *Sedgwick*, 14 N. York, 289. The facts in that case, briefly stated, are these. One Trowbridge undertook, at his own expense, to obtain for the defendant, Stanton, title from the state of New York to a certain lot of land in the city of Syracuse, in that state, then used and occupied by Stanton for a stone yard. Stanton had made erections on the lot, exceeding the value of $200, by virtue of which he had acquired a preëmption right to purchase it from the state, under a certain legislative act then in force. Stanton agreed to convey to Trowbridge, by a good and sufficient conveyance, in consideration of the above mentioned expenses and trouble, one undivided half of the lot free from incumbrance or lien except for the purchase money; both parties to share mutually the cost, or purchase price to be paid to the state therefor.

Trowbridge performed the contract on his part; he procured a patent to be duly issued to Stanton, and paid to him one half of the purchase money advanced to the state. Trowbridge then assigned his interest in the contract to the plaintiff, Sedgwick, and a demand of a conveyance of the one half

of the lot was made, which Stanton refused to give, and this action was brought to enforce the contract. The case was tried at a special term, and judgment was given requiring the defendant to convey to the plaintiff the undivided half of the premises. The defendant excepted, and the judgment was affirmed at the general term, and on appeal that judgment was affirmed by the Court of Appeals.

The doctrine of this case is, that the law of maintenance and champerty is not in force in that state, except as contained in their statutes. The opinion, a very elaborate one, pronounced apparently on very full consideration, was given by SELDEN, J. No question seems to have been made but that the contract sought to be enforced was within the definition of champerty at common law. The statute of the state then existing, 1856, prohibited any officer or other person from taking any conveyance of lands from any person not in possession, while such lands were the subject of controversy by suit, knowing the pendency of such suit; and also prohibited the buying or selling of any pretended title to lands, unless the grantor and those under whom he claimed should have been in possession for the space of a year before the sale, mortgages of lands by persons not in possession, and conveyances by such persons to those in possession, being excepted.

There was nothing in the contract which the plaintiff there sought to enforce, in contravention of the provisions of this statute. The same may be said of the case at bar. Judge SELDEN says, page 301, " I still think, in view of the manifest tendency of modern judicial opinion, as well as of the plain scope and intent of our legislation on the subject, that not a vestige of the law of maintenance, including that of champerty, now remains in this state, except what is contained in the revised statutes." See also *Durgin* v. *Ireland*, 14 N. York, 322; *Voorhies* v. *Dorr*, 51 Barb., 580.

We see nothing in the character of this contract contrary to the principles of natural justice and equity, and feel no repugnance therefore in allowing the plaintiff to recover. He has not, it is true, literally performed the contract, so far as

raising the mortgage which rested on the property attached is concerned. But he procured the money with which to raise it; took it twice to Brooklyn, New York, for that purpose; and was prevented from doing it by the defendant's attorney, who advised him that it was unnecessary. We think that was a sufficient performance. We advise the Superior Court to render judgment for the plaintiff.

In this opinion the other judges concurred.