# THOMAS R. MOSSMAN *v.* THE HAWAIIAN GOVERN-MENT.

QUESTIONS RESERVED BY THE CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED APRIL 29, 1896.     DECIDED SEPTEMBER 24, 1896.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE CARTER IN PLACE OF JUDD, C.J., DISQUALIFIED.

An adjudication of a question of descent in probate proceedings for distribution of personal estate is not conclusive upon that question in an action of ejectment for real estate as to one who was not a party or in privity with a party to the probate proceedings. *Keahi v. Bishop,* 3 Haw. 546, distinguished.

A conveyance by a disseisee to a third party is not void as against the disseisor.

OPINION OF THE COURT BY FREAR, J.

This is an action of ejectment to recover possession of certain land covered by Land Commission Award 3322 on the north-

easterly side of Hotel Street, in Honolulu, the plaintiff claiming title thereto by purchase.

Pleas and replications of considerable length were filed, setting forth the deeds and the records of the former proceedings referred to, but for the purposes of this decision they may be briefly stated in substance as follows:

Pleas. 1. That the plaintiff claims solely under two certain deeds from persons whose only claim of title was by descent from one Charles Kanaina, deceased, intestate, and that in certain proceedings in probate after notice, by publication, and hearing, the property remaining in the possession of the administrator of the estate of said Kanaina was adjudged to be distributed to certain other persons as the heirs of said Kanaina. 2. That in certain partition proceedings after notice, by publication, and hearing, the land in question was by order of court sold at auction, and was at such sale purchased by and conveyed to the defendant, all of which was known at the time to the plaintiff's grantors. 3. That the deeds to the plaintiff were made when his grantors were out of possession and the defendant in possession, holding adversely to them, with their knowledge.

Replications. 1. That the decree of distribution was void for want of jurisdiction of the court over the parties, because in one of the two published notices the date of hearing was set forth as September 25, 1882, the appointed and actual day of hearing being September 15, 1882; that, even if the decree were valid, yet the plaintiff's grantors were related to the said Kanaina in the same degree as that claimed by the distributees, and that therefore the plaintiff is entitled to at least a share of the estate, and that the proceedings for distribution were at the time thereof unknown to the plaintiff's grantors. 2. That the plaintiff's grantors were not parties to the partition proceedings, and that the same were at the time thereof unknown to them. 3. That the adverse possession of the defendant was unknown to the plaintiff's grantors at the dates of their conveyances.

To these replications there was a general demurrer.

The case comes here on the reserved question of the sufficiency of the pleas and the demurrer.

The estate to a portion of which the plaintiff claims title in this action, that of Charles Kanaina, father of King Lunalilo, was supposed to have been settled after much litigation during the years 1877-1881. And in view of the extent of that litigation, the length of time that has since elapsed, and the amount of property the title to which may be affected by this decision, as well as the importance of the legal questions involved, and the disputed effect of certain former decisions of this Court on closely related questions, we may be justified in stating the reasons for our conclusions at some length. The pleas, all of which in our opinion are insufficient, will be considered in their order.

In considering the first plea—that of a former adjudication of the question of heirship in certain probate proceedings—we shall assume that the notice by publication in those proceedings was not so defective as to be assailable collaterally in this case. The ground of our decision is that the question of heirship was not in fact adjudicated in those proceedings as to the plaintiff's grantors with reference to the real estate. Those were proceedings on the petition of the administrator of the estate of Charles Kanaina, deceased, for examination and allowance of his accounts, for distribution of the personal property (a sum of money) remaining in his hands, and for his discharge. They in no manner concerned the real estate of the decedent, and the plaintiff's grantors were not parties thereto, and (as must be assumed at this stage of the case) were without knowledge thereof.

The question now raised is whether a finding (of heirship) in the course of one proceeding (for distribution) in respect of one subject (certain personal estate) is conclusive in another proceeding (ejectment) in respect of a different subject (certain real estate) as to one who, though having constructive notice,

did not appear in the first proceeding. If the plaintiff's grantors are bound by the finding made in the first proceeding, he also is bound, for he is in privity with them.

The general rule is that a judgment is void as to one entitled to be heard who had no notice, actual or constructive; but if there was notice, then as to the subject of the proceeding the judgment is in every other proceeding conclusive, not only upon every point that was litigated in the first proceeding, but upon every point that might have been litigated; but as to a different subject, the judgment is conclusive only upon points actually contested and adjudicated in the first proceeding. Consequently, if one entitled to be heard appears but puts in only some of his defenses and remains silent as to others, he is in a subsequent proceeding upon the same subject bound as to all his defenses, but in a subsequent proceeding upon a different subject he is bound only as to such defenses as were made and adjudicated in the first proceeding; and if he makes default altogether he is in a subsequent proceeding upon the same subject bound as to all his defenses, but in a subsequent proceeding upon a different subject he is not bound as to any defense. In the present case we assume that the plaintiff's grantors received constructive notice of the proceedings for distribution, but they did not appear or take any part in the litigation, and therefore, although bound by the decree as to the subject of those proceedings—the personal property—upon all points that were or might have been raised in those proceedings including the question of heirship, they are not bound upon any of them in this action of ejectment upon a different subject matter—the real estate.

These propositions are well settled. The principal case is *Cromwell v. Sac*, 94 U. S. 351; see also *Nesbit v. Riverside Independent Dist.*, 144 U. S. 610; *Watts v. Watts*, 160 Mass. 464; *Jacobson v. Miller*, 41 Mich. 90. In *Watts v. Watts* the Court said: "It would be a harsh and oppressive rule which should make it necessary for one sued on a trifling claim to re-

sist it, and engage in costly litigation in order to prevent the operation of a judgment which would be held conclusively to have established against him every material fact alleged and not denied in the declaration, so as to preclude him from showing the truth if another controversy should arise between the same parties. There might be various reasons why he would prefer to submit to a claim rather than to defend against it. For the purpose of defending that suit he would have his day in court but once, and if he chose to let the case go by default, or with a trial upon some of the defenses which might be made and not upon others, he would be obliged forever after to hold his peace. But a plaintiff can claim no more than to be given what he asks in his writ. He cannot justly complain that the defendant has not seen fit to set up defenses and raise issues for the purpose of enabling him to settle facts for future possible controversies." In *Cromwell v. Sac* the Court said: "Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. * * * A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit; it does not make the allegations of the declaration or complaint evidence in an action upon a different claim."

The former judgments considered in the cases above cited were *in personam*, but the reasoning upon which those cases were decided did not rest upon that fact, but would have been equally applicable if the former proceedings had been *in rem*. In proceedings *in rem* more persons may be bound by the final judgment, because in them more persons who may be entitled to be heard may receive actual or constructive notice by seizure or publication than in proceedings *in personam*, in which the

notice must in general be personal. In either case, however, all persons who had notice, actual or constructive, are in all other proceedings bound as to all questions involved, whether contested or not, so far as the final disposition of the subject matter of the first proceeding is concerned; but so far as those questions themselves are concerned upon which the final judgment was based, they are not bound unless they contested or confessed them. A person may waive his right to the thing claimed without waiving his right to contest for other purposes the grounds upon which the claim is based.

An exception in the application of this rule viewed in the light of the rule requiring mutuality of estoppel is made by some courts which hold certain judgments *in rem* in admiralty conclusive in favor of a stranger as against a party (not, however, in favor of a party as against a stranger, as we are asked to hold in this case) upon the intermediate as well as the final facts adjudicated. This exception may perhaps be accounted for on other grounds than the nature of the proceeding as being *in rem*. If not, it must be regarded as resting on authority alone, and is not to be extended. See *Brigham v. Fayerweather*, 140 Mass. 411; 2 Van Fleet, Form. Adj., Secs. 518, 522; 2 Sm. Ld. Cas. 696-699. It is certain that in respect of probate proceedings, even when in the nature of proceedings *in rem*, the rule, not the exception, has been applied with practical uniformity.

To illustrate, if the determination of a question of relationship or heirship is the direct object of a proceeding *in rem*, the judgment will necessarily be conclusive upon that question in every other proceeding as to all persons whether they appeared in the first proceeding or not. Such seems to have been the case in *Ennis v. Smith*, 14 How. 400, in which decrees of the Courts of Nobility of the governments of Grodno and Kobryn in the Russian province of Lithuania, declaring certain persons to be the next of kin of General Kosciusko in a proceeding instituted for that purpose, were held in other proceedings in

the United States to be evidence of heirship as against persons who were not parties to the first proceeding. (See comments on this case in *Shores v. Hooper*, 153 Mass. 234.)

If the relationship or heirship is not the direct subject, but is merely one of the grounds upon which the final judgment disposing of the direct subject is based, as, for instance, if the direct purpose is the appointment of an administrator, and if in order to decide this matter the question of who is next of kin to the deceased is actually litigated and adjudicated, the adjudication will be conclusive upon all who were parties to that proceeding, even in a different proceeding for a different purpose, as, for instance, in a proceeding for distribution; *Caujolle v. Ferrie*, 13 Wall. 465; *Barrs v. Jackson*, 1 Phill. 582 (19 Eng. Ch. 581); *Howell v. Budd*, 91 Cal. 348; or in a proceeding for the settlement of an account; *Garwood v. Garwood*, 29 Cal. 514; or in an action of ejectment; *Blackburne v. Crawford*, 3 Wall. 190; *Kearney v. Denn*, 15 Wall. 51; so if the first proceeding were for distribution and the second in ejectment; *Keahi v. Bishop*, 3 Haw. 546; see 1 Van Fleet, Form. Adj. 68. But as against one who was not a party to the first proceeding there is no such estoppel by the intermediate findings of fact upon which the final judgment was based. *Spencer v. Williams*, L. R. 2 P. & D. 230. In *Blackburne v. Crawford* and *Kearney v. Denn*, *supra*, a question of legitimacy had been determined by the Orphans' Court in a proceeding for the appointment of an administrator; afterwards ejectment was brought by a brother who had been a party to the proceeding for administration and three sisters who had not been parties thereto; the adjudication was held not binding upon the sisters although binding upon the brother. In *Morin v. St. Paul, M. & M. Ry. Co.*, 33 Minn. 176, the adjudication of a question of heirship in respect of certain real estate by a probate court was held not binding in an action of ejectment for other real estate as to persons who had not been parties in the first proceeding. The Court said: "The proceeding in the probate

court and the judgment therein were in their nature *in rem*, and may be regarded as concluding all the world as to matters directly adjudicated.    And it would seem, too, that in any subsequent proceeding involving the same *thing* or *subject* as that before adjudicated upon, and in which conclusive effect is to be given to such former judgment, such effect may be attributed, not only to that which was actually declared and expressly determined by the judgment, but also in respect to the grounds or facts upon which the judgment proceeds. * * * But it cannot be that, in a case where the former judgment itself is irrelevant to any fact in issue, those not actually parties to the proceeding can be affected in respect to the grounds or facts upon which that judgment may have been based."    In *Shores v. Hooper*, 153 Mass. 228, an adjudication of heirship in a probate court in a suit involving only personal property was held not conclusive in a writ of entry for real estate as to persons not parties in the first suit.    And although the persons against whom the probate decree was set up were not entitled to be heard in the probate court, the decision was based not so much upon that ground as upon the ground that those persons had not in fact been parties to the former proceedings whether entitled to be or not.    Those persons were bound by the final decree disposing of the *res*, although not entitled to be heard, but not by the findings of fact upon which the decree was based.    Said the Court: "It is true, that, in order to prevail in her controversy with the administrator, the demandant was compelled to prove that she was the sole heir of Dr. Ellis; but the parties to the present controversy are not the same as those in that litigation, nor is the same property the subject of dispute.    It is urged by the demandant that this was in the nature of a decree *in rem*, and established her pedigree as the child of Dr. Ellis, and her status in reference to his estate as against all the world, so that the rights to all property, real or personal, and of all persons, are definitely settled, so far as those rights were dependent upon the question whether the plaintiff is the daughter of Dr. Ellis. * * * But while full

effect is given to these decrees in regard to the subject matter with which they deal, it has never that we are aware of been held, even as against those persons who had notice of the proceeding and were entitled to be heard thereon, that in other proceedings the facts involved were to be deemed as conclusively settled thereby."

It is clear therefore that upon the authority of the English and American decisions the plaintiff in this action of ejectment for real estate ought not to be bound by the adjudication of heirship made with reference to the personal property in probate proceedings in which neither he nor his grantors were parties.      But it is contended on behalf of the defendant that the rule has become established otherwise in this country by repeated decisions, the leading case being *Keahi v. Bishop*, 3 Haw. 546.      That case, however, differed from the case at bar in this that all the parties who were held bound in the action of ejectment by the adjudication of heirship in the probate proceedings had participated or were in privity with persons who had participated in the contest in the probate court.  Said the Court: "All the parties plaintiff in this present suit were present or represented (in the former suit),  *  *  * and indeed it is not pretended that they are not in point of fact the *same parties or privies* of blood," and again, Kapepa's relationship "was adjudged in this very court between these parties*  *  * and the judgment is conclusive on the matter of Kapepa's rela-- tionship, if incidentally questioned by the *same parties* in this case."      Thus, the actual decision in *Keahi v. Bishop,* so far as the questions of identity of parties and difference of subjects were concerned, is in entire harmony with the decisions elsewhere but is not an authority controlling the case at bar because not applicable to the facts of this case, for here, as was not the case there, the persons sought to be held were not represented in the former proceedings.   And in none of the subsequent cases in which the decision in *Keahi v. Bishop* has been referred to have the facts been similar to those of the present case.    See *Pahau v. Keelikolani,* 4 Haw. 295; *Rose v. Smith,* 5 Haw.

377; *Kaawihi v. Noa*, Ib. 381; *Kaawihi v. Rose*, Ib. 382; *Kailianu v. Lumai*, 8 Haw. 508; *George v. Holt*, 9 Haw. 47.

But in the opinion of the majority of the Court in *Keahi v. Bishop*, it was said that "the adjudication of a question of descent or pedigree will be binding not only in the proceedings, in which they take place, but in every other in which the same question is agitated." (pp. 551, 554). This statement taken in its broad sense and without reference to the parties upon whom the adjudication will be binding is a mere *dictum*, for it goes beyond the facts of the case, for in that case only those who were parties or in privity with parties to the first proceeding were held bound in the second proceeding. But taken in the light of the facts of the case and in connection with the accompanying language—"the judgment of a court of concurrent jurisdiction directly upon the point is as a plea, a bar, and the judgment of a court of exclusive jurisdiction is conclusive upon the same matter *between the same parties* coming incidentally in question in another court for a different purpose," "matters, which have been determined by judicial authority, cannot be again drawn into controversy *as between the parties or their privies*," and "a decree with regard to the *personal status* of an individual will be *equally conclusive with* a decision upon *a right of property*"—the statement is not at variance with the principles above set forth. It could hardly be that the Court intended to ascribe to an adjudication of descent or pedigree a peculiar conclusiveness or to rest the effect of a judgment upon the nature of the question decided without reference to whether the parties were the same, or whether the question was involved directly or collaterally, or whether the jurisdiction was exclusive or concurrent. An adjudication upon a question of descent, precisely as upon any other question, may or may not be conclusive according to the circumstances. As the Court said, it "will be equally conclusive with a decision upon a right of property" but not more so. The statement in its broad sense depending upon the nature of the question merely and without reference to the parties has never

that we are aware of been followed.     On the contrary in one case, *George v. Holt*, 9 Haw. 47, in which it was relied on in this sense, it was rejected by the Court.

That the statement cannot be taken as true without reference to the parties to the adjudication is also clear from the authority from which the statement purports to be taken.     It purports to be a quotation from the Duchess of Kingston's Case (2 Sm. Ld. Cas. 573).     It was not however taken from that case itself, for there is no such language there, but it was probably taken from the notes to that case, as appears from the reference to that case, though without volume or page, from the identity of the language of the several quotations with the language found in those notes, and from the volume and page (2 Sm. Ld. Cas. 667) cited in one of the briefs on file in *Keahi v. Bishop* where the same quotations are found.     The quotation is not strictly accurate, the words "will be binding" having been substituted for "may be binding."     This error is very material, taking the clause by itself, but not when read in the light of the accompanying clauses.     It was no doubt made inadvertently or perhaps the Court was misled into making it by the brief above referred to or by some other authority where the same error was made, as, for instance, *Clemens v. Clemens*, 37 N. Y. 73.     But however that may be, no inference can be made from either the Duchess of Kingston's Case, the notes thereto, or *Clemens v. Clemens*, that the findings upon which a final judgment is based in one suit will be binding in another suit for a different purpose as against one not a party or in privity with a party to the first suit.     On the contrary in the Duchess of Kingston's Case the Court expressly held, "that a sentence of the Spiritual Court against a marriage in a suit of jactitation of marriage is *not* conclusive evidence, so as to estop the Counsel of the Crown from proving the marriage in an indictment for polygamy," and among the reasons assigned for this conclusion we find, "first, because the parties are not the same;" and after enumerating various cases in which sentences of the Ecclesiastical Courts had been received as evidence in other suits, the

Court said, "but in all these cases, the parties to the suits, or at least the parties against whom the evidence was received, were parties to the sentence and had acquiesced under it; or claimed under those who were parties and had acquiesced." The celebrated *dicta* also in that case relating to the effect of judgments in general, one of which is quoted in *Keahi v. Bishop*, are expressly confined to cases "between the same parties."

But it is argued that whatever the actual decision in *Keahi v. Bishop*, it has generally been regarded by this Court as holding that a probate decree of final distribution is conclusive on a question of inheritance; and that the dissenting opinion in that case presents the same objections that are now urged against the effect of such a decree upon the title to the real estate. To what extent the Court or its members have regarded the decision in question in the manner referred to, we cannot say. It is quite likely that that decision has been thus misunderstood to some extent by both bench and bar, but such misunderstanding we believe has never been acted upon by the Court and should not be allowed to outweigh established principles. As to the objections of the dissenting Justice (the present Chief Justice) in that case, the question of non-identity of parties—upon which the present case depends—was not raised and could not have been raised because in that case the parties were the same. The ground of difference between the majority and minority of the Court was the question of the jurisdiction of the probate court to determine a question of relationship or heirship so as to affect the real estate. The majority of the Court may have erred on this point (see 1 Van Fleet, Form. Adj., 28, 29, 67, 74-76) but, assuming that they did not, or, if they did, that we are now bound by the decision, still it does not affect the present case—which depends on the question of parties. Whether the probate court which made the decree now involved had jurisdiction to determine the question of heirship in a proceeding instituted for that purpose, we need not decide. The proceeding was not in fact instituted for that purpose. Sec. 37 of Chap. 57 of the Laws of 1892 which confers.

upon Circuit Judges jurisdiction among other things "to determine the heirs at law of deceased persons and to decree the distribution of intestate estates" may go to this extent, but, if so, the proceeding should be instituted directly for the purpose. It appears in the present case that the probate court made a decree declaring who the heirs at law of the decedent were as well as distributing the personal estate, but even if it had jurisdiction at that time to entertain such a matter it did not have it in that particular case because there was no petition or notice to that effect. *Kailianu v. Lumai*, 8 Haw. 508.

It is true that under our statutes the same persons are distributees of personal estate and heirs of real estate and that therefore claimants of the real estate might in the capacity .of claimants of the personal estate appear in the probate court and contest the same question of descent or pedigree. But they are not obliged to do so. As shown above they may make default and thereby waive all rights to the estate which is made the subject of the suit—the personal estate—and be bound as to that estate upon all questions involved, and yet not thereby waive their right to the estate which is not made the subject of the suit—the real estate. Parties who sue cannot claim more than they ask. See on the subject of identity of statutes, *Morin v. St. P., M. & M. Ry. Co.*, 33 Minn. 179.

In the second plea—that of a sale in partition proceedings— the defendant seeks to charge the plaintiff with an estoppel,. not an estoppel of record on the ground that his grantors were parties to the partition proceedings or had constructive notice thereof by publication, but an estoppel *in pais* on the ground that they "stood by" with knowledge of the facts. But since the plaintiff in his replication denies that his grantors had such knowledge, it is admitted that the demurrer thereto cannot be sustained, in other words, that the second plea is unavailable at this stage of the case.

Under the third plea it is contended that a conveyance by a disseisee to a third party is void as to the disseisor by "the common law of England," which, "as ascertained by English

and American decisions," is, by Sec. 5, Ch. LVII, Laws of 1892, "declared to be the common law of the Hawaiian Islands in all cases, except as otherwise expressly provided by the Hawaiian Constitution or laws, or fixed by Hawaiian judicial precedent, or established by Hawaiian national usage, provided however, that no person shall be subject to criminal proceedings except as provided by the Hawaiian laws."

It is at least questionable whether such is the common law "as ascertained by English and American decisions," notwithstanding the statements of many standard authors to the contrary.

As for English decisions we know of none upon this subject prior to the Pretended Title Act, 32 Hen. VIII. c. 9. All subsequent decisions have been based upon that Act. The chief ground for supposing this to have been the common law previously is a remark in *Partridge v. Strange*, reported in Plowden, that that Act did not alter the common law except as to the penalty. But there had previously, from the time of Edward I., been many statutes passed upon the subjects of champerty and maintenance, and it is impossible to say how much the earlier decisions were affected by those statutes. We are at least without any definite knowledge of the law upon this subject as an intelligible system established by judicial decisions prior to the Pretended Title Act. The principal object in the enactment of those statutes seems to have been to prevent powerful lords from purchasing pretended titles for the purpose of harassing each other and more particularly for the purpose of oppressing and taking advantage of the common people by the exercise of the unfair influence of their wealth and position upon a weak or corrupt judiciary. But as the occasion for those statutes passed away with the changing conditions under which purchases came to be made more for purposes of trade and commerce than oppression, the courts grew less and less inclined to favor the rule and adhered to it only so far as obliged to do so by statute, and finally the statute itself was repealed in so far as it bears upon the present case. *Jenkins v. Jones*, L. R. 9 Q. B. D. 128.

Turning now to America, we find this subject covered by local statute in many states in the majority of which conveyances are expressly permitted notwithstanding adverse possession.    Stimson, Am. St. Law, Sec. 1401.    In the majority of the other states in which the question has arisen, the .judicial decisions are the same way.    Among the courts generally referred to and which are referred to by defendant's counsel in this case as holding such conveyances void by the common law are those of Massachusetts and New York.    But in the former state the court appears to have so held not so much by the common law of England as by the common law of Massachusetts which included the statute law of England at the time of the "Pretended Title Act."    *Somes v. Skinner,* 3 Pick. 52; *Brinley v. Whiting,* 5 Pick. 348; *Barry v. Adams,* 3 Allen 494.    And in New York we find the decisions based upon a local statute passed, as the court said, "at an early day" out of "deference for English legislation."    This statute was afterwards for the most part abrogated.    And the court said that "in this country, and especially in this state, the whole law of maintenance, except so far as it is embodied in our statutes has been repeatedly regarded by the courts as inapplicable to the present condition of society, and substantially obsolete," and that "even in England, the law of maintenance has fallen in a measure, into desuetude."    *Sedgwick v. Stanton,* 14 N. Y. 289.    Maine is another state in which the old rule was deemed law but only, as the court said, because it "was recognized by the Supreme Court of Massachusetts before the separation of this State from that Commonwealth."    The old law was however altered by statute and in reply to the argument of counsel for a strict construction of the statute, the court after showing the inapplicability of the old law to the present state of social equality, freedom of trade and fair administration of justice, said that it would not "thwart the purposes of beneficent legislation, by substituting therefor doctrines which had their origin in a semi-barbarous age, and which have long since fallen into disrepute with the occasion which elicited them."    *Hovey v.*

*Hobson,* 51 Me. 62.　Some Courts, it is true, adhere to the old rule more distinctly on the ground that it is the common law of England.　*Fite v. Doe,* 1 Blf. 127; *Martin v. Clark,* 8 R. I. 389; *Gruber v. Baker,* 20 Nev. 453.　But the weight of authority seems to be to the effect that, if this ever were the common law, it is now obsolete as such and has no existence at the present time apart from statute.　*Schomp v. Schenck,* 40 N. J. L. 195; *Mathewson v. Fitch,* 22 Cal. 86; *Bentinck v. Franklin,* 38 Tex. 458; *Wright v. Meek,* 3 Gr. (Ia) 472; *Hall v. Ashby,* 9 Oh. 96; *Brown v. Bigne,* 21 Or. 260; *Richardson v. Rowland,* 40 Conn. 565; *Roberts v. Cooper,* 20 How. (U. S.) 467; *Crane v. Reeder,* 21 Mich. 25; *Hadduck v. Wilmarth,* 5 N. H. 181.

We are further of the opinion that the doctrine contended for, if common law, is within the exception of the statute, "as otherwise fixed by Hawaiian judicial precedent, or established by Hawaiian national usage."　See *Danforth v. Streeter,* 28 Vt. 496.　The principal grounds upon which the rule is said to rest are champerty, necessity for livery of seisin, and inalienability of a chose in action.　Champerty is not a criminal offense here as it was by the common law or early English statutes.　The rule is not adapted to the conditions of equality, freedom of trade and fair administration of justice that have long prevailed here.　The common law as such was not in force here until January 1, 1893.　Livery of seisin has never been required here.　*Kapaukea v. Lawrence,* 4 Haw. 674; *Rose v. Smith,* 5 Haw. 377; *Keamalu v. Luhau,* 7 Haw. 324.　The ground of non-assignability of a chose in action as a support to this rule was disposed of in *Estate of Kealiiahonui,* 9 Haw. 6. Conveyances by disseisees have frequently been the basis of litigation here without their validity being questioned.　See, for instances, *Aylett v. Keaweamahi,* 8 Haw. 320; *Kela v. Pahuilima,* 5 Haw. 525; *Rose v. Smith,* Ib. 377; *Achi v. Kauwa,* Ib. 298.　In the two cases in which alone, so far as we know, the validity of such conveyances has been questioned the conveyances have been sustained, although in one of the

cases, *Kapaukea v. Lawrence,* 4 Haw. 674, no reasons are given and in the other case, *Estate of Kealiiahonui,* 9 Haw. 6, the reasoning bears only upon the question of non-assignability of a chose in action. See also *Henrique v. Paris, ante,* 408.

We are therefore of the opinion that the demurrer and pleas are insufficient and the case is remanded to the Circuit Court of the First Circuit for such further proceedings as may be proper.

*Kinney & Ballou* and *W. R. Castle,* for plaintiff.

*A. S. Hartwell* and *Thurston & Stanley,* for defendant.