JUDGE DUVALL
delivered the opinion op the court. (Judge SIMPSON dissenting.)
Young brought this action against Tevis as the indorser, and Rogers as the acceptor, of a bill of exchange. The following is the instrument sued on:
“$1,500. Shelbyville, August 31, 1853.
“Six months after date, pay to the order of John Tevis fifteen hundred dollars, value received, and charge yours,
“ To W. G. Rogers, Shelbyville.”
*200 The acceptance of Rogers appears in the usual form, written across the face of the paper, and on the back is indorsed the-name of “John Tevis” in blank.
Rogers made no defense to the action.
Tevis demurred to the petition, relying mainly upon the ground that the paper sued on was not a bill of exchange, but was incomplete, not having been signed by any person as drawer.
Pie also filed an answer, in the first paragraph of which he alleges, in substance, that Rogers requested him to sign three papers in blank, to be filled up with amounts and dates, and signed by drawers, and accepted as regular bills of exchange, to be used by Rogers; that he did accordingly sign the three papers, and hand them to Rogers, with that understanding, to be used by the latter when he should have caused the same to be drawn by a responsible drawer, and accepted in due form; but that the paper sued on, being one of the three mentioned, had never been drawn, and is not therefore binding on him.
The court below sustained a demurrer to this paragraph of the answer, overruled the demurrer of Tevis to the petition, and rendered judgment against him for the $ 1,500. To reverse that judgment he has prosecuted this appeal.
The most important question presented by the record, and the only one we shall notice, is that which arises upon the demurrer to the petition, and which involves the single inquiry, whether the instrument on which the action is founded is, as to the appellant, a complete or valid bill of exchange? For it is to be-observed that the petition contains no averment of any extraneous fact. The appellant is sought to be charged only as the indorser of a bill of exchange.
The utility of that class of contracts usually denominated negotiable paper, and the policy of sustaining its circulation and credit, have long been recognized by the courts of all commercial countries. It is allowed many and peculiar privileges; and so great is the protection which the law'' extends to the innocent holder of such paper, that there are said to be but few cases in which any defense will be held available as against him in favor of the antecedent parties.
*201 A bill of exchange is a written order or request, by one person to another, for the payment of money, at a specified time, absolutely and at all events. (3 Kent, 87.)
It is the well settled doctrine, however, that the language of no particular formulary is essential to the validity of a bill. “On the contrary,” says Judge Story, “the form and language may be greatly varied, and often is varied in the practice of different nations. It will be sufficient in our law that the contract be in writing, and have all the other substantial requisites to constitute a bill, however inaccurately or inartificially it may in other respects be expressed; or, in other words, it will be sufficient if it be in writing, and contain an order or direction by one person to another person, absolutely to pay money to a third person, and cannot be complied with or performed without the payment of money.” (Story on Bills, 46.)
And among the substantial requisites elsewhere enumerated by the same author, and which, he says, constitute the very essence of bills of exchange as commercial securities, are the names and description of the parlies to the instrument, whether as drawer, or payee, or drawee. For “ it is obvious that every bill must contain upon its face the name of the party by whom it is drawn.” “The name of the drawer is usually written or subscribed at the bottom of the bill, but this does not seem to be absolutely indispensable, for if the bill is written by him, and his name is inserted in the body of the bill, or is otherwise signed to it, so that it clearly appears that he is the drawer, it will be sufficient.” (lb., 71; Bayley on Bills, 37, 38; Chitty on Bills, 185; 3 Kent, 78.)
It is clear, therefore, that whatever may have been the liberality of the courts, or the indulgence of the law, in dispensing with mere matters of form in the execution or construction of bills of exchange, they constitute no exception to the fundamental rule which requires, as essential to the validity of every contract, that there be proper parties to it. In the language of Parsons, “we cannot conceive of a contract which has no parties.” And it would certainly be no less impossible to conceive of a promissory note which had no maker, or of a bill of exchange which had no drawer.
*202 The proposition that there can be no such thing as a bill of exchange without a drawer, is in effect conceded by the counsel for the appellee. But it is insisted that the defect in this particular, as it is exhibited upon the face of the instrument before us, is cured or obviated:
First, by regarding Rogers as the drawer. The argument is, that “Rogers, having accepted, is bound to pay; and no name appearing at the foot of the bill, he must himself be regarded and dealt with as both drawer and acceptor.” This, however, is a mere assumption, unsupported by any fact or rational iin-ference. The fact that he actually wrote his name across the face of the paper as the acceptor, is certainly sufficient to repel any presumption that he intended to occupy any other position upon the bill when completed.
Secondly, it is insisted that Tevis must be considered as the drawer. The indorsement of a bill, it is argued, is not merely the transfer of the paper, but that it is equivalent to a new bill, drawn by the indorser upon the acceptor, in favor of the indorsee, and that, therefore, Tevis, by indorsing this bill, became the drawer of a new bill, of which Young was the payee.
The first and most obvious objection to this argument is, that it assumes the existence of the very fact it is intended to prove. It assumes that the paper indorsed by Tevis was a bill of exchange, which, of course, implies a pre-existing drawer. It also assumes that Rogers was the acceptor of a bill at the time the indorsement was made. But is it not an abuse of terms to say that he was the acceptor of a bill that had never been drawn; or, in other words, that he had accepted an “ order,” or “request,” that had never been made upon him? According to Chitty, “ acceptance is defined to be the act by which the drawee evinces his consent to comply with, and be bound by, the request contained in a bill of exchange directed to him. The very term acceptance seems to suppose a pre-existing bill.” (Chitty on Bills, 184.) And is it less philosophical to say that the term “ acceptor ” necessarily supposes a pre-existing drawer?
The fallacy of all the reasoning of counsel upon this point, consists in their failure to recognize the distinction between a *203 bill of exchange and the mere form of such an instrument. The words written upon the face of the paper in question are utterly inoperative, and without force or legal effect for any purpose as a commercial instrument, without the name of a drawer, either subscribed to the paper, or inserted in the body of it. Whether the name of the drawer, or of any subsequent party to the bill, be forged or fictitious, makes no difference as it respects the liability of the indorser. The indorsement implies an undertaking that the antecedent parties are competent to draw and accept the bill, and that their signatures are genuine. But the indorsement does not imply an undertaking that the paper indorsed contains the names of all the antecedent parties necessary to constitute a valid bill of exchange, when the face of the paper itself shows that it is blank as to all or any of such names. The indorsement of the paper would, doubtless, confer upon the party intrusted with it, authority to fill up the blanks with the names of any parties, at the discretion of the latter; and so, the indorsement of a piece of blank paper would give the holder authority to make a bill of exchange, upon which the indorser would be liable, in the hands of an innocent holder for value, for whatever amount, or in the names of whatever parties, the bill might be subsequently drawn and accepted. But certainly it cannot be supposed that in either of the cases stated, the indorser could be held liable, as such, until the paper should have been drawn and executed and completed as a bill of exchange. It is not the mere authority to make a bill, which of itself creates the liability, but it is the execution of that authority.
We are referred to the case of Heylyn vs. Adamson (2 Burr., 669) as conclusive of the point under consideration. But in that case it will be seen that Lord Mansfield merely lays down the doctrine which has ever since been recognized by elementary writers, as well as by the adjudications of the courts upon this subject, “that where a bill of exchange is indorsed by the person to whom it was made payable, as between the indorser and indorsee, it is a new bill of exchange, and the indorser stands in the place of the drawer; the indorser undertakes to demand the money of the drawee; that the indorsee does not *204 trust to the credit of the original drawer; he does not know whether such a person exists, or where he lives, or whether his name ma,y have been forged. The indorser is his drawer, and the person to whom he originally trusted, in case the drawer should not pay the money.”
This is undoubtedly sound law, but we do not perceive the applicability of the principle to this case. The very question here is, whether Tevis is the indorser of a bill of exchange, and he certainly cannot be so regarded until it be first shown that the paper he indorsed was a bill. If it was, then, in the language quoted, he became, in legal contemplation, the drawer of a “new bill” as between himself and his indorsee, or, in other words, he occupies, as to the latter, the position of drawer. But if the paper indorsed was not a bill of exchange, or was not an inforcible contract of any kind, would it be contended that the indorsement would be, nevertheless, a new drawing, or the drawing of a new bill, upon which the indorsee who might part with his money on the faith of its validity, could hold the indorser liable? To have the effect of a new drawing, in the sense in which this and similar expressions are used in the authorities cited, the indorsement must be upon a bill, and not upon a mere incomplete form of such instrument, nor upon a blank piece of paper which is never filled up. Indeed, it is conceded in argument, and must in the very nature of the case be true, that the new undertaking of the indorser, resulting from the mere act of a blank indorsement, derives its character and its legal effect and efficacy from the bill or contract indorsed.
It is furthermore true, as argued, that “ a man may draw on himself, payable to his own order, but in such case the instrument is more in the nature of a note than a bill of exchange.” (Bayley on Bills, 26.) So it has been decided by the English courts, that under the statute of Anne, a promissory note made payable to the maker or his order, and by him indorsed, is a valid security, although said to be in an absurd form. The principle on which those decisions rest is said to be this: that the note, before it was indorsed, was in the nature of a promise to pay to the person to whom the maker should afterwards, by *205 indorsement, order the amount to be paid. But suppose the instrument first mentioned had not been signed by the party as drawer, or that the note in the case referred to had not been signed by the maker, could the validity of either the one or the other have been maintained upon any principle ? We do not see, therefore, how those cases can be regarded as affording any support to the argument in favor of the validity of the paper we are considering.
In the multitude of adjudged cases upon the subject of bills of exchange and promissory notes, we have met with no case in which a question similar to the one before us has arisen in an action to enforce the supposed liability of the parties to an instrument like this. There are cases, however, in which it has been expressly decided that instruments of this description cannot be treated as valid negotiable or commercial contracts.
In the case of Vyse vs. Clark, (5 Carr. & Payne, 403,) it was field, that a paper on which- the form of a bill was written, except the name of a drawer, and on which the defendant wrote his name as acceptor, and delivered it to the plaintiff, was not a bill of exchange, upon the ground thnt “ there must be a drawer to a bill.”
And in the more recent case of Stoessiger vs. S. E. Railway Co., (25 English Law and Eq. Rep., 235,) it appears that a parcel was delivered to the railway company for carriage, containing 9£ 10s. in cash, and an instrument bearing a bill of exchange stamp, in the following form : “ Three months after date, pay to me the sum of 11 £ 10s., value received.
“ To Mr. Cruttenden, &c.”
and written across it was an acceptance by Cruttenden; and the intention was that Gould should put his name to the instrument as drawer. In the course of transmission, the parcel was opened, and the instrument and the money it contained were abstracted. The action was against the company for the loss. It was held that the instrument was not a bill of exchange, because there was neither drawer nor payee; that it was an imperfect instrument, and gave power to a particular individual to make it a perfect instrument by putting his name to it as drawer.
After a patient and careful examination of all the author *206 ities within our reach, bearing-upon this question, a majority of the court (Judg'e Simpson dissenting) have • come to the conclusion that the paper upon which the appellant is sought to be charged in this action as indorser is not a bill of exchange.
Whether such a state of fact might not exist as, if properly alleged, might be sufficient to render the appellant liable, is a question not presented by the record, and not necessary to be decided.
We are satisfied that neither sound policy nor the interests of trade and commerce require that the liberality of construction which the courts have always been disposed to apply to this class of contracts should be so extended as to afford protection to the holder of a paper so obviously and palpably defective and incomplete as this.
The judgment is therefore reversed, and the cause remanded with directions to sustain the demurrer to the petition.