Keahi et al. *v.* Bishop et al.

---

## SUPREME COURT—IN BANCO.

### . APRIL TERM—1874.

*Allen, Ch. J., Harris, J., (Judd, J., dissenting.)*

---

KEAHI ET AL. *vs.* BISHOP ET AL.—ON EXCEPTIONS FROM MR. JUSTICE HARRIS.

"THE adjudication of a question of descent or pedigree will be binding not only in the proceedings in which they take place, but in every other in which the same question is agitated, and the mode in which the question was brought before the Court is immaterial."

The Probate Court having determined that a certain relationship exists without reference to the title in any real estate, the related party is entitled to use that decision for the purpose of getting possession of and defending himself in holding any real estate which by such relationship be inherits.

Mr. Justice HARRIS delivered the opinion of the majority of the Court.

This is an action of ejectment to recover possession of certain real property which belonged to one Nakuapa (w.), deceased intestate. The plaintiffs set forth that they are cousins to the intestate and, as they say in their complaint, are entitled to the property by virtue of that relationship. That is to say, that they thereby aver themselves to be next of kin to the deceased.

The defendants answer and say that the said plaintiffs are estopped from attempting to prove in this Court that they are next of kin, and therefore heirs at law to Nakuapa (w.), because that on the 31st day of October, 1873, decree was duly made in this Court, that Kapepa, under whom these defendants claim, was the half-brother and next of kin to the deceased and her heir, and ordering the property in the

hands of the temporary administrator to be delivered to Kapepa; and the defendants say that in consequence of that decree the plaintiffs ought not to be admitted to say, allege or prove that they are entitled to the property of the said Nakuapa as nearest heir at law.

Mr. Justice Harris sustained the plea and from his decision, appeal was taken to the full Court.

The plaintiffs make the following points:

1. That a partition of property is only cognizable in a Court of Equity, (see Section 1228 of the Civil Code) and aver that if any practice of distribution of real estate in the Probate Court has heretofore existed in this kingdom it is contrary to that statute.

2. That a judgment rendered in the exercise of such assumed power is no bar to an action brought either in law or equity relative to the real estate, which is the subject of the illegal action, and by way of illustration, defendants say, that the Probate Court would have no right in settling the account of an administrator to foreclose a mortgage, and if they assumed to do so, the judgment would be a nullity, and they suggest that the judgment in this case is analogous.

3. The Probate Court cannot debar the plaintiffs of their constitutional right of trial by jury.

4. The plaintiffs cannot have waived their right by any action in the Probate Court, for consent cannot give jurisdiction; plaintiffs further say that so far as the personal estate of the deceased was concerned, the action of the Probate Court is conclusive on that point, but that the Court has no jurisdiction to partition and distribute any real estate.

5. The Supreme Court in Banco sitting on appeal from a Probate Court sits distinctly in the capacity of an appellate Probate Court. 8 Cushing, 542, Peters *vs.* Peters; 4 Paige, 623, Bogardus *vs.* Clark.

6. Section 1130 of the Civil Code definitely settles the right of trial by jury as follows: "Issues of fact arising in

any suit contemplated by Section 1100 and 1116 shall be tried by a jury, unless a jury trial shall be waived by the parties, with the consent of the Court."

BY THE COURT: The history of this case is as follows :

Nakuapa, the widow of Puhalahua, deceased 23d of January, 1869, and letters of administration were applied for by Keahi, one of the plaintiffs in this case, February 5th, of the same year. This application being resisted by others claiming nearer relationship, it became necessary that temporary letters of administration should be granted, and A. F. Judd, Esq., was so appointed, who took charge of the estate and without any objections from any one exercised curatorship of the estate, renting the real property and receiving the rents therefor. The proceeds arising from the real estate, accumulated in Mr. A. F. Judd's hands until at the day of final distribution, hereafter referred to, they amounted to $3,492.36.

The application for letters of administration on Keahi's petition came up for hearing March 9th, 1869 : Keahi, Manuhea, now represented by Kewalo ; Paahao, claiming to be brother to the deceased ; Kapepa, claiming to be half brother ; Kaoaopa, claiming to be an adopted daughter ; Nailialua, claiming to be grandson to the deceased's elder sister ; and Iosepa, claiming to be grandson of the deceased ; were represented then.

There was much testimony, extending over many days, and on the 30th of March the other claimants having made common cause against the claim of adoption by Kaoaopa, argument against her adoption was submitted, and on the 3d day of April the Court adjudged that she had not made out her adoption, from which decision she appealed to a jury, being then represented by W. C. Jones, Esq., one of the counsel in the present case. The cause came on for hearing on appeal before a jury, July 12th and 13th, 1869, and the jury found that Kaoaopa was the adopted child of Nakuapa.

Keahi et al. *v.* Bishop et al.

A motion was then made to set aside the verdict, and that a new trial be had ; this motion was refused July 31st; on the 19th of December Kaoaopa filed a motion to be declared heir, setting forth as a reason that the matter in litigation had been determined by the jury, the verdict of which had declared her the adopted child which (as it was said) by the ancient law of the kingdom, would make her the legal heir, and entitled to the possession of the estate.

Judgment was entered (*pro forma*) for Kaoaopa, and appeal taken, which having been heard by the full Court, judgment was given to the effect that inasmuch as the verdict was not responsive to the issue, it should be set aside. The way in which this verdict was deemed not responsive to the issue was because it did not determine whether the child was adopted with an intention of making her heir—heirship or non-heirship being the question at issue,—and accordingly on that issue of heirship they went to the jury the second time, January 25th, 1872, and the verdict was against the adoption. New trial was granted on Kaoaopa's motion December 27th, 1872, and the cause having been withdrawn from the jury, went to hearing before the full Court, and a decision was rendered to the effect that Kaoaopa had not established her claim and adoption, and that she take nothing as heir to the said estate, January term, 1873. This was the end of Kaoaopa's claim, all the other claimants having made common cause against her ; she disappeared out of the arena, and this is significant, for it will be found that the proceedings subsequently are very similar, and if this suit may be entertained, it will follow notwithstanding this prolonged litigation and repeated decisions, Kaoaopa could again try her claim by bringing an action of ejectment, for she is no more concluded than these present plaintiffs. Thus it will be seen that up to this time no one ever thought that the matter of this estate was not proceeding according to the law and practice in this Kingdom.

Immediately after the decision of Kaoaopa's claim, viz: March 24th, 1873, a petition was made for an order of distribution, the accounts were duly referred to a master, and the case continued until May 12th, when the contest began between the remaining claimants in just the same way, viz: all the other claimants combined to resist Kapepa's claim to be the sole heir and distributee, for he averred himself to be half brother, which was nearer than any of the others.

On the 4th of July, Chief Justice Allen, before whom the matter was being heard, at his chambers, gave judgment that Kapepa had not proved his relationship, and was not entitled as heir to the estate. It was agreed by counsel that the question at issue was whether Kapepa had proved his claim to be half brother of the deceased. Appeal was taken to the Supreme Court, which adjudged that Kapepa was half brother, and next of kin and heir at law of the said estate, October 21st, 1873. Now it will be seen that the judgment was just as conclusive in the case of Kapepa, declaring that he was half brother, as it was in the case of Kaoaopa, declaring that she was not the adopted daughter, and the question remains, is the judgment conclusive in either case ? The notice for all parties interested to come in and present the evidence of their claims to the property was duly published from March 24th to April 6th, 1873. The case had been litigated for about four years as stated above, and continued to be litigated on this new issue until October, so that it would appear almost impossible that every one did not have notice, and in point of fact, all the parties plaintiff in this present suit were present or represented, Kawelo, (w.,) now coming in as heir to Manuhea, and the two minors appear now by Kaleihiapo, who was an active participant in the whole proceedings, and indeed it is not pretended that they are not in point of fact the same parties or privies of blood.

"The judgment of a Court of concurrent jurisdiction directly upon the point is as a plea, a bar, and the judgment

Keahi et al. *v.* Bishop et al.

of a Court of exclusive jurisdiction is conclusive upon the same matter between the same parties coming incidentally in question in another Court for a different purpose." Duchess of Kingston's case. And again, "it is thoroughly well settled, that matters, which have been determined by judicial authority, cannot be again drawn into controversy as between the parties or their privies." And again, "the nature of the judgment has no effect upon the operation of the rule, that a decree with regard to the personal status of an individual will be equally conclusive with a decision upon a right of property." And adjudication of a question of descent or pedigree will be binding not only in the proceedings, but in every other in which the same question is agitated. The mode in which the question is brought before the Court is immaterial, provided it be decided.

Now it was adjudged in this very Court between these parties, that Kapepa was the half brother and they only then, as now, cousins, and by the authority of the above cases the judgment is conclusive on the matter of Kapepa's relationship, if incidentally questioned by the same parties in this case. It is not necessary that the form of the action should be the same, if the merits of the whole claim have been substantially tried in the first action. Lawrence *vs.* Vernon, 3 Sumner, 20. Surely the kinship of the man Kapepa was fully tried, and he was decided to be half brother, and the law says that half brothers shall inherit before cousins, and these persons claiming to be cousins cannot now question Kapepa's brotherhood. The words of Chancellor Kent in Smith *vs.* Lewers, 3 Johnson 168, are peculiarly applicable in this case: "If this be not an attempt to try over again the merits of the former recovery, I must be greatly mistaken in my view. It would be against public policy and convenience, it would be productive of endless litigation, to allow the losing party to try the cause over again, because he was not prepared to meet his adversaries at the trial of the first suit."

Endless litigation, for if the theory of this action should prevail, each one of these parties or their representatives might try anew the right to this succession at any time within twenty years. Kaoaopa or her representatives might do the same. And inasmuch as the money distributed was derived from the rent of the real estate, after Nakuapa's death, whether or not the order of the Probate Court, based upon this verdict would protect the administration, yet each of the parties above named could pursue Kapepa for the money in his hands paid to him by the administrator, as mesne profits of this real property. And a large proportion of all the estates in this country, which have been distributed within these last twenty years, would be subject to litigation. The examination of the records shows that the same issue that was substantially tried in the first action is now sought to be tried in this, viz.: was or was not Kapepa half brother to the deceased? and in the words of Mr. Justice Sawyer in the case of Goodrich *vs.* the City of Chicago, "we must hold that there is no such difference between the cases as to take the present action out of the operation of the principle of *res adjudicata.*"

But it is said that the Probate Court has no jurisdiction to decide the title to real estate or to partition real estate, etc. No such jurisdiction has been assumed in this case. No title to any real estate has been determined. There has not been any partition of real estate. The Court has merely determined that Kapepa is half brother, without reference to the title in any real estate, and, if by reason of this decision, he is entitled by law to any real estate, he is entitled to use that decision for the purpose of getting possession of it or in defending himself in the possession of it.

By the statutes of this country and practice of our Courts, they had the authority to decide the relationship of the parties to the deceased subject to appeal, and it appears that in accordance with the decision, he has gone into possession of

the real estate as heir at law. This would not prevent any nearer relative, who had not previously been heard from asserting his title to the land. For instance, if one should arise, who could prove he was a full brother or a son, he might eject the half brother. But Kapepa could not be made to prove over again his relationship. The judgment. which he has always had is conclusive evidence of that, and this Court cannot allow the validity of its own judgment, arrived at after an immense amount of testimony has been offered and great care has been bestowed in the consideration of the case, to be questioned.

The statutes are explicit on the subject, and the practice has been uniform for a great many years. The 1241st Section of the Civil Code: " Matters of probate and of administration, shall be heard and determined by the Judge of the Court having jurisdiction thereof without the intervention of a jury."

In this respect, the provisions of the 1455th Section are worthy of consideration, which are to the effect that when real estate is to be divided among several children, the eldest child, after it (the real estate) has been appraised by the Probate Court, may elect to pay the co-heirs their shares in money,—clearly showing the authority intended to be vested in the Probate Court.

But it is said that this would be contrary to the Constitution, which says as follows: " Article 7th. In all cases in which the right of trial by jury has been heretofore used, it shall be held inviolable forever, except in actions of debt or assumpsit in which the amount claimed is less than fifty dollars."

It is not made to appear that at any time previous to the adoption of the Constitution a jury was ever used to determine one's relationship to a deceased person. Indeed, the Act approved December 31st, 1864, (see Session Laws 1864, page 20,) expressly declares that the Section 1241 of the Civil

70

Code has been held, " not to permit an appeal to the jury on any facts touching the descent of property, being a matter of investigation in the Probate Court." This certainly is a conclusive legislative declaration as to what the law had been held to be previous to that time, and the Act goes on to provide that either party to the case when an appeal is taken may " move the Court that any issue of fact may be tried by a jury and his motion shall not be denied."

Now the plaintiffs in this action had the right of having their issue tried by a jury in the former proceedings, and waived the right, so that this argument falls to the ground entirely.

To re-quote from the Duchess of Kingston's case: " The adjudication of a question of descent or pedigree will be binding not only in the proceedings, in which they take place, but in every other in which the same question is agitated, and the mode in which the question was brought before the Court is immaterial."

Kapepa's pedigree was settled by a judgment of a Court of competent jurisdiction, to wit, this, the Supreme Court of the Kingdom, for it will be observed that the statute does not say as does the Massachusetts statute, that the appeal is to be taken to the Supreme Court in probate, but directs that the issue of fact shall be tried by the Circuit Court or the Supreme Court. It has been so tried and determined and cannot be tried again, and inasmuch as the plaintiffs only allege that they are cousins, the judgment that Kapepa was half brother is a complete bar in the right to recover by the present action. Let judgment be entered for defendants with costs.

> ELISHA H. ALLEN,
> *Chief Justice Supreme Court.*
>
> CHAS. C. HARRIS,
> *Associate Justice.*

Honolulu, June 8th, 1874.

Dissenting opinion of Mr. Justice JUDD:

This is an action of ejectment to recover possession of the real property of one Nakuapa, (w) deceased intestate, the plaintiffs claiming to have inherited the property as cousins of the decedent. The defendants claim as grantees of one Kapepa, and plead a decree of the Supreme Court, of the 31st day of October, 1873, in the matter of the estate of said Nakuapa, in probate, by which the said Kapepa was decreed to be the half brother and next of kin and heir at law of said intestate.

The rule of law is clear that "the judgment of a Court of concurrent jurisdiction directly upon the point, is, as a plea, a bar, and the judgment of a Court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive *upon the same* matter, between the same parties, coming incidentally in question in another Court, for a different purpose." Duchess of Kingston's case.

The question of the greatest difficulty in this case is as to the indentity of the causes of action in both suits. In the first action the petition was for distribution ; the present action is ejectment. It is not necessary that the form of action should be the same in each, if the merits of the whole claim have been substantially tried in the first action.—Lawrence *vs.* Vernon, 3 Sumner, 20. But the judgment must be in respect of the same fact or title.—Outram *vs.* Morewood, 3 East, 346. In the first action the subject matter was the deceased intestate's personal property, and who were entitled to it as distributees. The parties to the former decree and their privies are concluded by the adjudication of this question. "*Nemo bis vexari pro eadem causa.*"

The administrator would be fully protected in passing the personal property over to the distributee named, according to the decree.—Loring *vs.* Steinman, 1 Met., 204. But in order to give this binding effect to a judicial decision, the Court must have jurisdiction of the *subject matter* as well as of the parties.

The case Loring *vs.* Steinman, 1 Met., 204, goes to the extent of declaring that the decree of a Probate Court naming the distributees of personal property is a proceeding *in rem.* Chief Justice Shaw says, "In many cases Courts of peculiar jurisdiction have jurisdiction of the subject matter absolutely, and persons are concerned incidentally only, according to their respective rights and interests; and we think the distribution of an intestate estate is analogous. The subject matter, the property, is within the jurisdiction of the Court, and the judgment by determining who are entitled to distributive shares, and extending to the entire estate, determines that no other persons are entitled, and is necessarily conclusive, because nothing further remains to be distributed."

The property over which an administrator has jurisdiction are the assets, that is, from the French word *assez*, what is *sufficient* to make him chargeable to a creditor and a legatee or party in distribution so far as the property extends.—2 Williams Exors, 1406.

Real estate or any interest therein is not assets to be administered by the administrator.—Dean *vs.* Dean, 3 Mass., 258. Drinkwater *vs.* Drinkwater, 4 Mass., 353.

The annual rents and profits of the real estate of the deceased, even though insolvent and due after the decease of the intestate, are not assets in the hands of the administrator but belong to the heir, and the authority to inventory real estate is given only by statute.—Gibson *vs.* Farley, 16 Mass., 280.

The fee of the real estate is not in abeyance, it descends to the heirs, the moment the breath is out of the ancestor's body—and the administrator has no authority over it. How then can the decree of distribution made by the Probate Court affect real estate ? and how can those in possession of the land, be they tenants, tenants in common with the intestate, heirs at law, grantees, mortgagees in possession, what-

ever may be their claim of title, be affected by a decree of a Probate Court which has not by law any jurisdiction over the real estate or its claimants.

There is nothing in our statutes, nor in the adjudged cases, certainly nothing on principle, which calls the claimant of real estate, which was of a deceased intestate, to come into the Probate Court and make good his claim.

An heir at law might or might not make any effort in procuring evidence to substantiate his relationship to the decedent before the Probate Court, knowing that the assets only were to be distributed. In this case the notice in the newspapers, which in probate takes the place of a summons, recites the amount of money in the administrator's hands, and that he asks that a final order may be made of distribution of the property in his hands to the persons thereto entitled.

The decree of October, 1873, in the case before the Court, undertakes only to distribute the property in the hands and under the control of the administrator, (which means only the personal estate,) to Kapepa. If the plaintiffs knew that by statute law, or by adjudged cases or on principle, they were to be concluded as to their inheritance in the land by the force of that decree, a very different showing on the evidence might have been made.

A party should not be concluded by a judgment in a prior suit or prosecution where from the nature or course of proceedings he could not expect that its consequences would be so serious and where he could not avail himself of the same means of defence, or redress, which are open to him in the second suit.

In New York State, before the statute of 1837 was enacted, which places wills of real and personal estate upon the same footing and prescribes that the probate of a will is conclusive evidence as to its validity, it was held, that sentence of a Surrogate, or of a higher Court having power

to review his decision, in relation to the competency of a testator to make a will of personal property, is not conclusive upon the parties to that litigation, in a subsequent suit as to the validity of a devise of real estate contained in the same will. Bogardus *vs.* Clark, 4 Paige, 623.

In an English case, Maxwell *vs.* Montague, which is quoted in Bogardus *vs.* Clark, a testator was held *non compos* in the Ecclesiastical Court as to the will of personal estate, and was held to be *compos* at law where the title to the real estate was tried. The Court say, "I apprehend, however, it was a mistake to call them concurrent jurisdictions; and that this seeming anomaly arises from the fact, that each Court has a jurisdiction which is entirely exclusive of the other, in reference to the different interests claimed under the will; the Probate Court having the exclusive jurisdiction and right to decide as to the validity of a will of personal estate, but having no power or authority whatever to determine the right as to the real estate claimed under the will, or to decide any question which can have the effect to deprive the heir at law, or the devisees, of their common law right of trial by jury, so far as concerns the devise of real estate."

The parties are entitled to their jury and their trial at common law, and the remedy to enforce its judgment.

It is no answer to this objection to say that by statute of 1864, a jury may be called to try issues of fact, in probate, for, the appellate, though the Supreme Court, is still a Probate Court and its jurisdiction is the same. Peters *vs.* Peters, 8 Cush., 542.

The question in the first case is, who is entitled to the personal estate? In the second case the question is, who is entitled to the land?

It may be that, in the particular case at bar, the narrower question, "is Kapepa half brother to Nakuapa?" may be decisive of the present case, but the subject matter, the

different property, is so entirely distinct in each case, that the former judgment ought not to be held as conclusive. "If one claim as heir to his father and fail, he will not be estopped from afterward claiming as heir to his mother." 1 Stark Ev., 254.

In Outram *vs.* Morewood (above quoted), Lord Ellenborough says, "a judgment therefore, in each species of action, is final only for its own proper purpose and object and no further."

To say that the question of the "heirship" of Kapepa was within the jurisdiction of the Probate Court, and to admit that such a Court has no jurisdiction over the title to real estate, are inconsistent positions. In my opinion the adjudication of the question of the "heirship" of Kapepa, so far as it is decisive of the only matter of which the Probate Court had jurisdiction, to wit, the distribution of the personal estate, cannot be stretched so as to bar the present suit, which is a question of title to real estate. It does not seem to me to be just or equitable or according to the principles of law, to take part of a decree of an inferior Court of limited jurisdiction, and say that it sweeps away the claim of the alleged heirs of an intestate to the real property; the property of which the Probate Court could know nothing and over which it had no jurisdiction.

It has been said that all the tedious proceedings had in the Probate Court in the matter of the estate of Nakuapa (the intestate in this case) would be rendered nugatory unless the Court shall hold that the final determination thereof bars the present action. This is true; but if this Court should hold that Probate Courts have no jurisdiction to try such questions, when the intestate's estate is only land, an immense amount of useless labor and energy would be saved in the future.

I am therefore of the opinion that as the proper purpose and object of the proceeding in the Probate Court was the

distribution of the personal estate, the decree made is final only for that purpose and object, and is not a bar to the present action.

Honolulu, June 8th, 1874.