## SARAH NAKOOKOO AND AMY HELENE NAKOO-KOO, OTHERWISE KNOWN AS AMY HELENE THOMPSON, MINORS, BY THEIR GUARDIAN JAMES A. THOMPSON *v*. DAVID NOHOLOA.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED OCTOBER 26, 1909.          DECIDED DECEMBER 8, 1909.

HARTWELL, C.J., WILDER AND PERRY, JJ.

ESTOPPEL—*former judgment.*

> An adjudication upon a petition for administration on the estate of a person dying testate concerning the correctness of a translation of the will and to the effect that it devised all property wherever situate is conclusive in an action to quiet title between the same parties relating to real estate left by the decedent.

### OPINION OF THE COURT BY PERRY, J.

(Wilder, J., dissenting.)

This is an action at law to quiet the title to certain land situate in Honolulu, Oahu. The defendant filed an answer of general denial and with it a plea in bar setting up in substance the following: That in June, 1906, one Hikaalani Hobron Noholoa residing at Kalaupapa, Molokai, died testate seized in fee of the land in controversy; that the defendant was at that time her husband; that in the circuit court of the second circuit of this Territory, in probate, Hikaalani's will was upon the filing of a petition, the publication of notice and such other proceedings as are usually had in such cases admitted to probate on December 12, 1906; that at the hearing upon that petition the will, the original of which was in Hawaiian, was translated into English, a copy of the translation being attached to the plea, and that such translation was adopted by the court as correct; that subsequently in the same court a petition entitled "In the matter of the estate of Hikaalani Hobron Noholoa, de-

ceased," was filed by one Kaimiola Nakookoo Gray for the appointment of an administrator of the estate of the decedent situate without Kalaupapa and alleging that petitioner was a niece and heir at law of Hikaalani, that the will devised to this defendant only such property as was situate at Kalaupapa, and that decedent left the land now in controversy and certain other real estate and also certain moneys outside of Kalaupapa and within this Territory; that at the hearing of the last mentioned petition defendant appeared and opposed it on the ground that all of the property belonging to the decedent was devised by her will; that at the hearing Kaimiola offered in evidence the record of the proof of the will already referred to including the translation filed at the first hearing; that the court made an order denying the petition for administration; that on appeal the supreme court of Hawaii affirmed that order on the ground that the will devised all the property of Hikaalani wherever situate to this defendant (18 Haw. 265); that Kaimiola appealed to the supreme court of the United States assigning as error the action of the supreme court of Hawaii in deciding the case upon the translation referred to and its ruling in construing the will, that by the latter the decedent left to this defendant all of her property wheresoever situate and whether within or without Kalaupapa; that on such appeal the supreme court of the United States sustained the decree of the supreme court of Hawaii (214 U. S. 108, 113); that subsequently but prior to the institution of this action Kaimiola died; that Hikaalani left surviving her as heirs at law this defendant and Kaimiola the daughter of one Nakookoo the brother of Hikaalani and no others; that the present plaintiffs are nieces of Kaimiola and grand nieces only of Hikaalani and that their only claim to the land in question is as heirs at law of Kaimiola.

To this plea plaintiffs filed a replication denying that at the hearing of the petition for the probate of the will the trans-

lation above mentioned was adopted by the court as correct, denying the correctness of the statement as to the relationship of the plaintiffs to Hikaalani and admitting the truth of all the other allegations of fact contained in the plea.

The court below sustained the plea in bar and upon the pleadings entered judgment for the defendant. Plaintiffs bring a writ of error.

In this court the plaintiffs abandoned their contention that they are entitled to the land as heirs of Hikaalani and rely solely upon the claim of title derived through Kaimiola as her heirs. Plaintiffs, therefore, are the privies of Kaimiola. If the latter if living would have been bound in this case by the former proceedings the plaintiffs are now bound. Was Kaimiola concluded? We think she was.

Whatever conflict, real or apparent, there may be in the statements elsewhere of the principles in the law of res judicata or in the manner of the application of those principles to the circumstances of particular cases, as much of the law as is involved in the case at bar is settled in this jurisdiction. "A final decision fixes certain rights and in a contest as to such rights it is incumbent upon parties to put in their whole case. If they do not, it is their fault and they cannot afterwards be permitted to set up what they previously omitted. Consequently so far as the subject matter or ultimate thing adjudged is concerned it is conclusively presumed that every intermediate point that might have been raised was settled whether it was raised or not. But as to a different subject, only such points as were actually raised and decided in respect of the first subject are regarded as settled. For although the subject is different, still the parties have actually had their contest over the intermediate point and should not be permitted to have a second contest; but intermediate matters not litigated or decided in the first proceeding are not regarded as settled as to a different subject, for not only have they not been decided in fact but

there was no duty to litigate them in the first case except so far as that case was concerned. A party may waive his right to litigate a matter as to one thing without waiving his right to litigate it as to another thing, for he may waive his right to the thing itself without waiving his right to another thing. * * * Of course, these propositions are stated subject to other established principles, such as that the parties must be the same, the matter must be directly in issue and the court must be one of complete jurisdiction. We may add also that another proposition relied on in argument, namely, that there is no estoppel as to matters that may be merely inferred from a judgment, applies only to inferences that are possible or probable and not to those that are necessary." *Hawaiian Commercial Sugar Co. v. Wailuku Sugar Co.,* 14 Haw. 50, 54, 55.

Passing for the moment the question of jurisdiction, it is apparent that within these principles the plaintiffs are bound. The parties in the two proceedings, that is, the petition for administration and the present action, are the same. While circuit judges sitting in probate have jurisdiction under our statute to sell the land of the decedents when necessary to pay debts it may be assumed for the purposes of this case that the first proceeding was solely for the appointment of an administrator of the personal property and that this action relates to a different subject matter, the title to the land. The ultimate matter adjudged in the first case, the right to administration regardless of the will, is not involved in this, but two points which do arise in the case at bar and which are essential to the plaintiff's case did arise and were adjudicated in the first. Those points are the correctness of the translation of the will and the construction of that will. The plaintiff's predecessor, Kaimiola, not only was a party to the first proceeding but actually litigated these two intermediate points. She herself offered in evidence, with the record of the probate of the will, the translation which was adopted as correct by the circuit judge in

probate and by the two appellate courts in succession. Direct issue likewise was raised as to the proper construction of the will as thus translated. In order to obtain administration it was essential for the plaintiffs to show that the personalty in Honolulu was not devised by the will. The defendant took the position that the will did devise it. The court might have decided this issue by assuming that the word "waiwai" as used in the will meant personal property and by holding that the expression "a me na waiwai e ae apau i ike ia no'u," "and all the other property known to be mine," referred to all personal property wheresoever situate. What it did do, however, was to determine, as it properly could under the pleadings, and as it naturally would, what the word "waiwai" in fact meant in the connection in which it was used and then to construe the expression here quoted, and it held that waiwai meant "property" generally and not "personal property" specifically and that the expression referred to all other property wherever situate and not merely to all other property at Kalaupapa. This was an intermediate point properly determined within the pleadings in order to determine the ultimate matter of the right to administration. In this proceeding then for a different purpose that adjudication, although on an intermediate point in the former case, is binding. "If the relationship or heirship is not the direct subject, but it is merely one of the grounds upon which the final judgment disposing of the direct subject is based, as, for instance, if the direct purpose is the appointment of an administrator, and if in order to decide this matter the question of who is next of kin to the deceased is actually litigated and adjudicated, the adjudication will be conclusive upon all who were parties to that proceeding, even in a different proceeding for a different purpose, as, for instance, in a proceeding for distribution." *Mossman* v. *Hawaiian Government,* 10 Haw. 421, 427. See also pp. 424, 425; and *Burns* v. *Afong,* 19 Haw. 486.

In the discussions of the principle of res judicata reference is constantly made to the former adjudication as being one by a court of competent jurisdiction, but whether by that is meant that the court must be one competent to make the adjudication which it did make or one competent to adjudicate the ultimate question arising in the second case is not always clear. It may be that the cases are not in accord on that point. However that may be, upon this point also the law, as far as applicable to the case at bar, has been settled in this jurisdiction. In *Keahi* v. *Bishop*, 3 Haw. 546, an adjudication of a question of pedigree in a probate court in a proceeding for distribution of the personal property of a decedent was set up as a bar to the litigation of the same question of relationship in an action of ejectment. The former proceedings were held to constitute a bar. The court said inter alia, "the court has merely determined that Kapepa is half brother without reference to the title in any real estate, and, if by reason of this decision, he is entitled by law to any real estate, he is entitled to use that decision for the purpose of getting possession of it or in defending himself in the possession of it." In a subsequent proceeding "Kapepa could not be made to prove over again his relationship. The judgment which he has always had is conclusive evidence of that, and this court cannot allow the validity of its own judgment, arrived at after an immense amount of testimony has been offered and great care has been bestowed in the consideration of the case, to be questioned. * * * Kapepa's pedigree was settled by a judgment of a court of competent jurisdiction. * * * It has been so tried and determined and cannot be tried again, and inasmuch as the plaintiffs only allege that they are cousins, the judgment that Kapepa was half brother is a complete bar in the right to recover by the present action." Pages 552, 553, 554. One of the justices dissented upon the very point whether the court of probate had jurisdiction to make a finding in that proceeding

which would be binding at law in an action of ejectment concerning a different subject matter, and Van Fleet agrees with the dissenting justice. 1 Former Adj., pp. 74-76. We need not consider the point as though it now arose for the first time. That decision was rendered in 1874 and as far as this particular question of jurisdiction is concerned it has not been departed from in any of the later cases. It has become a rule of property and ought not now to be departed from. Many titles have doubtless passed on the strength of the ruling there made that such intermediate adjudications of heirship in probate in a proceeding for distribution are binding at law in ejectment. No difference in principle exists between an intermediate question of heirship and an intermediate question of the translation of a will or of its construction. If each was involved in the first proceeding and was actually litigated the determination of it will be binding upon the same parties in the subsequent proceeding.

It was impossible for the court in the proceeding set up as a bar in this case to determine the question of the petitioner's right to administration on the ground upon which it was claimed and in view of the sole ground of opposition by the present respondent without construing the will. In determining whether that petition should be granted the court had jurisdiction to construe the will and that jurisdiction included the power to hold that the will devised *all the property* of whatever nature as clearly as it did the power to hold that the will devised *all the personal property*. In the *Keahi* case it could as well have been urged, and it was urged, that the probate court was without jurisdiction to determine who were the heirs of the *real estate*; but it admittedly had jurisdiction to adjudicate who were the distributees (the same persons under our statute who were the heirs) of the personal property and having so adjudicated the adjudication was held conclusive as to the real estate as well. It was on this very point that the

members of the court were unable to agree. All the objec-
tions and arguments now urged concerning lack of jurisdiction
to try the title to real estate were advanced and considered in
that case.

As already stated, *Keahi* v. *Bishop* has not been overruled
upon this point. In *Kauhi* v. *Liaikulani*, 3 Haw. 356, the
prior grant of administration did not involve a determination
of heirship; nor did the appointment of guardians. The court
simply held in the later proceeding that there had been no
adjudication in the earlier.

In *Kailianu* v. *Lumai*, 8 Haw. 508, the adjudication claim-
ed as a bar was a decree that the property which consisted solely
of land should be equally divided between five persons named
as being the issue and heirs of the decedent. The decree was
made upon a petition for letters of administration. The court,
"passing by the question as to whether the probate court had
authority at all to entertain a petition for administration on an
estate consisting solely of real estate of an intestate who had
died seventeen years before, when all claims to be settled by the
administrator would have been barred by the statute of limit-
ations" held that "the judgment rendered by the circuit judge
was not responsive to the petition" and that such a judgment
could not be rendered "on a petition for letters of administra-
tion," referring to that course as a usurpation of jurisdiction.
That was a state of facts not at all analogous to that in the
case at bar. The *Kailianu* case, the court said in that opinion,
"differs radically from *Keahi* v. *Bishop*." The distinction was
pointed out in the following language: "There the adminis-
trator had been appointed, had settled the debts and brought
money into court to be distributed to the heirs of the intes-
tate. The probate court was held to have authority to ascertain
who the distributees were, and, having the various claimants
before it and hearing the evidence of their relationship, made
a decree as to who were entitled to the fund by virtue of their

relationship to the intestate. This decree adjudicating the descent or pedigree was held to be 'binding not only in the proceedings in which they took place but in every other in which the same question is agitated'—but it is only binding when the decree is a competent one, that is, made by a court having jurisdiction." While reiterating this general principle, there is no indication in the entire opinion of disapproval of *Keahi* v. *Bishop*.

*Henry Smith* v. *Hamakua Mill Co.*, 13 Haw. 245, likewise does not hold to the contrary. It was there held that the probate judge did not have jurisdiction in 1871 to declare the heirs of a decedent in a direct proceeding instituted for that purpose as distinguished from a proceeding for the distribution of property or to decree a distribution of the real estate,— neither of which statements is in conflict with *Keahi* v. *Bishop*. On the only other question determined, a former adjudication of a question of heirship or relationship in a proceeding in probate for the distribution of personal property was held not binding in a subsequent action of ejectment with respect to real property *as to one who did not appear as a party or claimant* in the probate proceedings. In other words, the sole ground of the decision upon this latter point was that Kapehe, the party against whom the estoppel was urged, was not a party to the first proceeding. This also is in accord with the actual decision in *Keahi* v. *Bishop*.

*Proper* v. *Proper*, 14 Haw. 596, was a libel for divorce in which the main question was as to the construction of certain statutes relating to service by publication. The remark that "in former years circuit judges not infrequently distributed estates on petitions and notices for appointment of administrators, and distributed real estate as well as personal property on final distribution, but this court has not upheld the exercise of such jurisdiction," citing the *Kailianu* and *Hamakua Mill*

cases, adds no light not furnished by an examination of those cases.

The judgment is affirmed.

*A. G. M. Robertson* for plaintiffs.

*C. H. Olson* (*Holmes, Stanley & Olson* on the brief) for defendant.

### DISSENTING OPINION OF WILDER, J.

I dissent from the majority on the ground that on the petition for letters of administration the circuit judge sitting in probate and on appeal this court and the United States supreme court had no jurisdiction to construe the will to the effect that the ancestor of the plaintiffs had no title to the land in question, that is, that it was devised by the will to defendant Noholoa. That there was jurisdiction to construe the will so far as to ascertain whether the decedent died intestate as to any personal property requiring administration is conceded of course. The opinion of the majority proceeds upon the theory that if a court in determining an ultimate point of which it undoubtedly had jurisdiction adjudicated an intermediate point the adjudication of that intermediate point is a bar in subsequent proceedings between the same parties or privies although as to a different subject matter. That proposition has been approved by this court in *Hawaiian Commercial Sugar Co.* v. *Wailuku Sugar Co.*, 14 Haw. 50. But it must be remembered that the court or judge adjudicating the intermediate point must have jurisdiction to decide that point, otherwise it is no more a bar than if it or he had no jurisdiction to determine the ultimate point. The ultimate point here was whether the petition for administration should be granted or denied. The intermediate point determined was the construction of the will that it devised all the land of the testatrix wherever situate, in effect determining that defendant and not plaintiffs' ancestor was entitled to the land involved in this action.

The general principles which are applicable are well stated
in *Kauhi* v. *Liaikulani,* 3 Haw. 356, 357, where the court
speaking through the present chief justice, said: "A decree
of a court of competent jurisdiction, is generally conclusive
in matters which (are) required to be adjudicated as a basis
for the decree. In granting administration, the intestacy of
the decedent requires to be determined and that fact when so
determined should not afterwards be questioned by parties to
the proceedings. But if the court should go on to decide other
matters not then requiring adjudication, as for instance who
the heirs are, such adjudication would have no conclusive effect.
In appointing a guardian, the court has only to find prima
facie cause for such appointment. But that in any ex parte
or preliminary proceedings in probate there is a final adjudica-
tion of heirship, kindred or legitimacy of birth or marriage, is
more than can be admitted. Such questions are always open
on hearings for final distribution. There is then no formal ad-
judication which is conclusive on the status of the appellee."
In that case in speaking of intestacy the court undoubtedly had
reference to intestacy as to personal property and not as to
land.

In *Kailianu v. Lumai,* 8 Haw. 508, which was an action of
ejectment in which plaintiffs claimed to be the great grand-
daughters of the patentee, the trial court directed the jury to
find for the defendants on the ground that on a petition for
administration of the estate of the patentee the pedigree had
been decided by the judge in probate adversely to plaintiffs'
claim in that he found that the intestate's land should be equally
divided between certain persons whom he decided to be the
heirs. This court said (p. 510): "This could not be done on
a petition for letters of administration. It was a usurpation
of jurisdiction that was common enough in the probate courts
of fifteen or twenty years ago. Undoubtedly such findings
were generally in accord with the real facts, and for that rea-

son have been very generally acquiesced in. But neither by statute nor by precedents does such an authority exist. If the petition before the court was for the appointment of an administrator all that was coram judice was either the appointment of one or the refusal to appoint one. We hold that the court had no authority, upon the petition for letters, to order the real estate partitioned among the heirs." The court then goes on to distinguish that case from *Keahi* v. *Bishop,* 3 Haw. 546, relied on by the majority in the present case. It points out that there the administrator had been appointed, had settled the debts and brought money into court to be distributed to the heirs of the intestate. As stated the probate court had authority to ascertain who the distributees were and having ascertained that it was held binding in other proceedings between the same parties as to land, but as the court in the *Kailianu* case very well said (p. 511): "It is only binding when the decree is a competent one, that is, made by a court having jurisdiction." It should be remembered too that the writer of the opinion (Chief Justice Judd) was the one who dissented in the *Keahi* case, although subsequently he had repeatedly joined in decisions affirming the rule announced by the majority in that case.

In *Proper* v. *Proper,* 14 Haw. 596, 600, this court said: "In former years circuit judges not infrequently distributed estates on petitions and notices for appointment of administrators, and distributed real estate as well as personal estate on final distribution, but this court has not upheld the exercise of such jurisdiction."

In *Smith* v. *Hamakua Mill Co.,* 13 Haw. 245, it was held that the probate court did not have jurisdiction in 1871 to declare the heirs of a decedent in a proceeding instituted for that purpose as distinguished from a proceeding for the distribution of property, nor did it have jurisdiction to decree a distribution of real property.

Nakookoo v. Noholoa, 19 Haw. 667.

In the *Keahi* case the ultimate point to be determined was who were the persons entitled to the money, and the intermediate point necessary to be adjudicated was their relationship to the decedent. Undoubtedly there was jurisdiction to determine both points. In this case the ultimate point was whether the petition for administration should be granted or denied. The intermediate point adjudicated was that the decedent had devised and bequeathed all of her personal *as well as her real* property to defendant. Whatever was decided as to the real property was not only unnecessary to dispose of the ultimate point, the right to administration, but was beyond the jurisdiction of the court in that proceeding to do. In my opinion the decision in the Keahi case does not control the one at bar.

It is with particular regret that I feel compelled to differ from the majority, in view of the fact that it was only on account of the land involved (there not being $5000 worth of personal property) that allowed this matter to be appealed to the United States supreme court. However, if this court made a mistake in deciding a matter concerning which it had no jurisdiction and allowed the United States supreme court to fall into the same error, now is the time to point it out and rectify the mistake as far as possible.

---

No. 10. SARAH NAKOOKOO AND AMY HELENE NAKOOKOO, OTHERWISE KNOWN AS AMY HELENE THOMPSON, BY THEIR GUARDIAN, JAMES A. THOMPSON, v. DAVID NOHOLOA. Error to Circuit Court, First Circuit. Petition for Rehearing filed December 11, 1909. Decided December 14, 1909. Hartwell, C. J., Wilder and Perry, JJ. Per curiam: The plaintiffs' petition for rehearing is denied without argument under the rule. The law of res judicata applies to decrees of appellate courts, although of affirmance only. See the following cases, which were

considered in this case: *Mitchell* v. *Mitchell*, 6 Md. 224; *Chouteau* v. *Gibson*, 76 Mo. 38; *Crane* v. *Blum*, 56 Tex. 325; *Sturgis* v. *Rogers*, 26 Ind. 1; *Goodsell* v. *Telegraph Co.*, 55 N. Y. Sup'r Court·173; 24 A. & E. Ency. 722, 812; 13 A. & E. Ency. 43, 44. The plea and the replication show that each of the appellate courts entered a decree and that in each instance the specific point adjudged was that relating to the construction of the will. That the opinion upon which a decree is based may be examined to ascertain the precise question determined, see *Rawlins* v. *Honolulu Soap Works*, 9 Haw. 496, and *Burns* v. *Afong*, 19 Haw. 486. It appears to be clear to the majority of the court that the denial of the petition for administration, which petition was based solely on the ground that there was property not disposed of by the will and contested solely on the ground that there was no such property, was based on no other ground than that by the construction which the court placed on the will there was no property subject to administration. The questions decided were, within the meaning of the rule, directly and not collaterally in issue. All of the points referred to in the petition and argument for rehearing were considered at the former hearing.

*A. G. M. Robertson* for plaintiffs.

*Holmes, Stanley & Olson* for defendant.

Sylva v. Wailuku Sugar Co., 19 Haw. 681.

# KAANAPU SYLVA AND HANNAH JACKSON *v.* WAI-LUKU SUGAR CO.

### PETITION FOR REHEARING.

ARGUED DECEMBER 7, 1909.                    DECIDED DECEMBER 15, 1909.

### HARTWELL, C.J., WILDER AND PERRY, JJ.

LIMITATIONS, STATUTE OF—*action to recover possession of land—entry.*
    The term "entry" used in the statute refers to the common law
    extrajudicial remedy of one who is ousted from his freehold,
    whereby to regain possession.

### OPINION OF THE COURT BY HARTWELL, C.J.

(Perry, J., dissenting.)

The defendant having filed a petition for rehearing of the case reargument was requested "upon the meaning and effect of Instruction 18, in view of other instructions relating to the same subject and of the ruling in *Kapiolani Est.* v. *Thurston,* 17 Haw. 324, 325; *Motes* v. *U. S.,* 178 U. S. 320 (458), and *Fid. Mut. Life Assn.* v. *Mettler,* 185 U. S. 320."

The instruction was as follows:

"No. 18. If you find from the evidence in the case that the defendant entered upon the lands in dispute as shown by the evidence or any portion of them under claim of title, or deed, that such entry was, in law, wrongful unless such entry was made within the period of ten years from the date the title or right to such land was first vested in the party making such entry, the defendant, and within ten years from the time the right to such land accrued to the predecessor or predecessors, if any, under whom such right is claimed by the defendant."

The defendant's attorney argued that there is an essential difference between harmless error in rulings upon evidence, as in cases above cited, and erroneous instructions which cannot be regarded as offset or cured by correct instructions, citing *Territory* v. *Richardson,* 17 Haw. 231, 236, in which case instructions

applicable in an action for money had and received were held
not to be cured by instructions appropriate to the case, which
was the trial of an indictment for embezzlement. It may be
that the opinion of the majority of the court in the present case
states the rule about conflicting instructions in broader language
than can be reconciled with the ruling in *Territory* v. *Rich-
ardson*. But this does not dispense with the necessity of con-
sidering whether the instruction 18, above cited, may not be
correct. If the term "entry" is taken in its popular meaning
of going upon one's land, an instruction that one's entry upon
his land, when not dispossessed, more than ten years after he
acquired it, is wrongful, would be not only preposterous, but, as
stated in the dissenting opinion, equivalent to an instruction to
find in this case for the plaintiffs; but if instruction 18 may
properly be taken to mean that defendant's entry would be
wrongful, made for the first time ten years or more after the
right to make it first accrued, and if this would be a correct
statement of the law, there would be no occasion to consider the
effect of other instructions.

But at common law entry was the extrajudicial remedy for
the wrong done by ousting the owner of the freehold, whether
by abatement, intrusion or disseizin and applies only in cases
"when another person who hath no right hath previously taken
possession of lands or tenements." 3 Blackstone's Com., 168,
174. If the ouster is effected by discontinuance or deforce-
ment "the owner of the estate cannot enter but is driven to his
action." Ib. 175. The remedy by entry, however, must be
pursued "in a peaceable and easy manner and not with force
or strong hand." Ib. 179. If this could not be done the rem-
edy to obtain possession was by writ of entry. Our statute of
limitations, ch. 127 R. L., part 2, entitled "Real Actions," was
taken mainly from the Massachusetts statute, ch. 196 Pub.
Stat., which is based upon the statute 3 & 4 Will. IV. c. 27.
This is evident by comparing the English statute, found in the

appendix of Angell on Limitations, 6 ed., with the Massachusetts and Hawaiian enactments. It is evident that the term "entry" is used in our own statute as well as in the others mentioned in its common law meaning.

Sec. 1988 R. L., then, in requiring that no person shall make an entry upon any land unless within ten years after the right to bring an action to recover possession of it first accrued, means that the entry must be made within the time named and not after and implies that the person entitled to possession was ousted by the disseizor or otherwise, for if in possession he would have no occasion to "recover" it. By Sec. 1990 R. L. "In the construction of this chapter the right to make an entry *or* commence an action shall be deemed to have first accrued at the times respectively hereinafter mentioned," including the time "when any person shall be disseized," and "in the cases not otherwise specially provided for, the right" (to make an entry or commence an action) "shall be deemed to have accrued when the claimant or the person under whom he claims has become entitled to the possession of the premises under the title upon which the entry or action is founded."

The instruction, therefore, means in substance and legal effect that the first entry by a dispossessed owner of land must be made within ten years after he was ousted when his right accrued to bring an action to recover its possession.

If it be said that the jury would have taken the popular meaning of "entry upon land" and that the legal meaning ought to have been defined by the court the answer is that failure to do this, when not requested by the defendant, is not error.

In the expression in the instruction "within the period of ten years from the date the title or right to such land was first vested," the word "or" may be regarded not as an alternative but as equivalent to "meaning." A right to land does not necessarily imply ownership. It "is generally treated as the right to property not in possession, as distinguished from jus in re, which

implies the absolute dominion." 2 Bouvier's Law Dict. 73. "And this, indeed, is the accurate expression for every case of that species of jus in personam which is styled jus ad rem. In every case of the kind, the party entitled has jus in personam ad jus in rem acquirendam. That is to say, he has a right, availing against a determinate person, to the acquisition of a right availing against the world at large. And, by consequence, his right is a right to an act of conveyance or transfer on the part of the person obliged." 2 Austin, Jur. 42.

*S. M. Ballou* for the petitioner.

*R. P. Quarles* contra.

