Mr. Justice Merrick
delivered the opinion of the court.
The facts necessary to be adverted to are these:
Shepherd gave to the complainant, Pepper, a deed of trust upon his property known as part of lot 2 in square 164, of this city, for $35,000, and shortly after gave him an additional deed of trust upon the same property, to secure the sum of $10,000 with interest. Afterwards Shepherd gave a deed of trust to secure to Mrs. Mercy G. Gray a certain sum of money upon the same property, including in her deed the adjacent property known and designated in the pleadings and proofs in this cause as lot A, adjoining the property which was conveyed in trust to secure Mr. Pepper.
At the time of all the encumbrances there were valuable buildings erected upon that part of lot 2 which was embraced in the deeds of trust to Pepper, and those buildings projected over and were in part built upon the lot A, which was one of the subdivisions made by Mr. Shepherd of the original divisions of the square; and not only did they project over it, but there were certain other easements connected with it, adits to the buildings, outlets, carriageways and doorways over this adjacent property, but not specifically set out in terms in the deeds of trust to Pepper.
In this state of the case, upon default having been made, Pepper proposed to sell the property under the two deeds of trust to him, but by reason of the omission or refusal of one of the trustees to concur in the sale under the provisions of the deeds of trust, he had recourse to a court of equity to remove one of the trustees and to supply his place by another.
In the progress of that suit it so happened, by inadvertence, that when the decree came to be made to substitute another trustee, there was an error in the description of the property in the decree, by leaving in the designation of the *273 property a blank, tbe result of which was that the decree was uncertain in itself and practically void on account of the uncertainty in its description of the property.
The defect escaped observation until the substituted trustees had undertaken to make a sale at which Pepper became the purchaser. After the sale Mr. Shepherd filed his bill on the equity side of the court to set it aside for various reasons alleged, as being void and being a cloud upon his title. That cause was so proceeded with that the bill was dismissed by the equity court, because, as the judge held, the sale to Pepper under the decree was utterly void. The decree being entirely uncertain as to the property, there was no effective appointment of a trustee, and there was no effective sale under the decree; the whole thing, in point of fact, was a miscarriage. Thus the bill was dismissed by the court of equity upon the ground that there was no cloud upon the title, because the sale itself was a nullity.
Thereafter Pepper, the beneficiary in the first two deeds of trust, filed the present bill, making Shepherd, the original mortgagor, and Mrs. Gray, the subsequent incumbrancer, parties, as also the trustees in a certain subsequent deed of trust which need not be referred to particularly in the matter now under consideration.
The parties came in to answer that bill; Shepherd, on his part, in his answer, as well as in the bill which he had filed for the purpose of setting aside the sale, averring that that sale was an entire nullity and that it passed no title. Mrs. Gray came in and by her answer also averred that the sale to Pepper was a nullity. Both averring the sale to be a nullity, still object that Pepper has not any right now to make a sale of the property, upon the ground that having made his sale he must abide by it. In the same breath they assert that he acquired no title under that first sale, and that, by virtue of the sale, he is estopped from selling again. That is the main question in this cause.
Now it is perfectly apparent that the defence thus made is a defence which a court of equity cannot entertain. They *274 claim that lie is estopped by a sale, and yet, in tbe same breath, they say that nothing passed under that sale, and that the decree was ineffective to pass any title to the trustees under it; and they have forced Shepherd by the attitude taken in the independent bill by him and in the defences made here, to appeal for redress to the court once more.
While they undertake to maintain that there is an estoppel on his part, they seem to forget altogether that there was a paramount estoppel not only in law, but according to the fundamental principles of justice, to the defences which they now set up. It is impossible that they can aver in one breath that the sale was utterly void and nugatory, and in the same breath deny that he has any redress and any right to appeal to a court of equity to enforce his rights, it being admitted on all hands that his debt has not been paid, and that he has received no benefit whatsoever from the sale thus made and thus assailed.
During the progress of the argument, a case was revived in my memory, which entirely covers and overwhelms any such defence as that. I refer to the case of Philadelphia, etc., R. R. Co. vs. How., 13 How., 307, the decision in which was given by Judge Curtis, and the appositeness of the rule laid down there will appear whe'n I state what were the facts in that case which affect that portion of the decision which I shall read.
Sebre Howard had brought a suit, on the law side of the Cecil County Court of the State of Maryland, against the railroad company upon a contract for an accounting and in assumpsit. When the case came on for trial, the railroad company defended the case upon the ground that the action should not be assumpsit, but that the contract made between the parties was a contract under seal, and Howard’s remedy, if any, was in covenant. He was dismissed from the court upon the defence thus made. He turned around and brought suit against the company in the United States court for the District of Maryland, in covenant, and when that case came on to be tried, the defendant set up the defence that it was not a covenant, that the contract was not under seal, that *275 lie could not maintain covenant but must sue in assumpsit. Here was almost a perfect parallel to tbe pretensions made by tbe defendants in tbis case. That being tbe predicament of tbe case at tbe trial, this prayer was made on tbe part of tbe plaintiff (I read from page 335 of 13 Howard):
“ If tbe jury find from tbe evidence that tbis instrument of writing was produced in court, and relied upon by tbe present defendant as a contract under tbe seal of tbe Wilmington & Susquehanna Railroad Company, in an action of assumpsit brought by Sebre and Hiram Howard against tbe last mentioned company in Cecil County Court; and that tbe said suit was decided against tbe plaintiffs upon tbe ground that tbis instrument was duly sealed by tbe said corporation as its deed, then tbe defendant cannot be permitted in tbis case to deny tbe validity of said sealing, because such a defence would impute to tbe present defendant itself a fraud upon tbe administration of justice in Cecil County Court.”
In commenting upon tbe prayer and affirming it, tbe Supreme Court, by tbe mouth of Judge Curtis, uses tbis language at pages 336-7: “It is further objected that tbe facts supposed in tbe instruction did not amount in law to an estoppel. We think otherwise. Hall vs. White, 3 C. & P., 137, was detinue for certain deeds. Tbe defendant wrote to tbe complainants’ attorney and spoke of tbe deed as in bis possession under such circumstances as ought to have led him to understand a suit would be brought upon the faith of what be said. Best, C. J., ruled: 'If the defendant said be bad tbe deeds, and thereby induced tbe plaintiffs to bring their action against him, I shall bold that they may recover, though tbe assertion was a fraud upon bis part.’ In Doe vs. Lambly, 2 Esp., 635, tbe defendant bad informed tbe plaintiffs’ agent that bis tenancy commenced at Lady-day, and tbe agent gave a notice to quit on that day. Tbis not being heeded, ejectment was brought, and tbe tenant set up a bolding from a different day. But Lord Kenyon refused to allow him to show that be was even mistaken in his admission, for be was concluded. Den vs. Oliver, 3 *276 Hawks, 479; Crockett vs. Lashbrook, 5 Mon. (Ky.), 530; Trustees vs. Williams, 9 Wend., 147, are to the same point. These decisions go much further than this case requires, because the defendant not only induced the plaintiff to bring this action, but defeated the action in Cecil County Court 'by asserting and maintaining this paper to he the deed of the company; and this brings the defendant within the principle of the common law, that when a party asserts what he knows is false, or does not know to be true, to another’s loss and his owu gain, he is guilty of fraud; a fraud in fact if he knows it to be false, fraud in law if he does not know ■it to be true. Polhill vs. Walter, 3 B. & Ad., 114; Lobdell vs. Baker, 1 Met., 201. Certainly it would not mitigate the fraud if the false assertion were made in a court of justice, and a meritorious suit defeated, thereby. We are clearly of opinion that the defendant cannot he heard to say that what was asserted on the former trial was false, even if the assertion was made by mistake. If it was a mistake, of which there is no evidence, it was one made by the defendant, of which he took the benefit and the plaintiff the loss, and it is too late to correct it. It does not carry the estoppel beyond what is strictly equitable to hold, that the representation which defeated one action on a point of form should sustain another on a like point.”
That case is absolutely in point as to this: Shepherd filed his bill asserting that the sale was a nullity by reason of the defect in the decree appointing a trustee. He now comes in, and so does Mrs. G-ray, asserting that that sale was absolutely void, and yet saying, because that sale was void, the party is to he stripped of all his rights, and he must stand by that inefficacious sale. If they asserted the validity of the former sale, then, of course, Pepper would be in possession, and they might say he was not entitled to any further remedy. But having asserted solemnly the invalidity of that sale, they cannot now interpose the proceedings which culminated in it as an obstacle to the complainant in his effort to obtain satisfaction of a debt which is honestly due to him. That is the principal point in this cause.
*277 The second question in the case is made by Mrs. Gray to this effect, that inasmuch as she is the first incumbrancer on this side lot A, Mr. Pepper shall not be entitled to have the whole property sold, without first discharging her whole claim.
So far as his title to sell the whole property is concerned, it rests upon two grounds: first, that he was an equitable mortgagee as to that additional lot, and it is admitted as between him and Shepherd, that it was the design of those deeds of trust to embrace that additional lot, and if Mrs. Gray were out of the case there would be no difficulty in vindicating the absolute right of Pepper to have the entirety sold under these proceedings, which are to reform a deed and then carry out the contract thus reformed.
But Mrs. Gray says that she had no notice whatsoever of any title, equitable or otherwise, as between Shepherd and Pepper in respect to the lot A, which is a dependent lot upon the other; being, as I said, in part built upon in connection with the principal building upon the lot 2 which he, Pepper, is entitled to as first incumbrancer.
There might be, if the counsel for the plaintiff had made it so in his evidence in the cause, maintained perhaps with success on the part of Pepper, that he was entitled to have the whole of that additional lot sold because that additional lot, by the manner of the structure, is made a servient tenement to the other lot, and the servitudes are notorious and visible. Part of the building was actually erected on this additional lot and patent to the eye of everybody concerned, and the adits to it of the carriageways and doorways also were over this lot A, and he might perhaps very successfully have maintained his right to sell the building along with the easements upon this additional lot and as a necessary part and parcel of its enjoyment, subject, of course, to the fee simple right so far as it did not interfere with these manifest and apparent easements and servitudes visible to the eye of everybody who saw the property.
But it is not necessary, for the purposes of the relief prayed in this case, to consider or to decide how far, as be *278 tween Pepper and Mrs. Gray, that is a servient tenement. It is apparent that the two properties have been held in a general ownership, and the nature and character of the two perhaps is sufficiently made apparent to the court by the testimony in this cause to this effect that to sever-them would be destructive of the .value of both of them. And although Mr. Pepper has not brought home to the knowledge of Mrs. Gray the equitable mortgage as between him and Shepherd, yet the fact of the building being upon the two lots, and the fact being apparent, and, indeed, admitted by the answer of Shepherd, that if a sale was made the whole property ought to be sold together, because it would decrease the value of both to be sold separately, constitute a case where a court of equity should order all the property to be sold together.
The objection made on the part of Mrs. Gray, that she being the senior encumbrancer upon this additional lot, the common rule should be applied in her favor, to wit: that there should be no sale of that additional lot until Pepper, the senior encumbrancer on lot 2 and the junior on the additional lot, had first redeemed her whole debt, would be utterly inequitable as applied to the facts and circumstances of this case. The property being indivisible in its nature, and being admitted to be so upon the record, and it being destructive to the interests of all parties to sell separately, the necessities of the case require and the administration of justice amongst the parties demands that it should be sold together. The court will so decree, because the rule of equity always recognized and enforced wherever it can be, that you shall so use your own as not to injure your neighbor, applies with overwhelming force to the pretensions of Mrs. Gray, that she shall hold on in order to extort (practically that is her position) from the mortgagee a redemption of her whole mortgage when she knows she is not entitled to any but a very inconsiderable portion of the encumbered premises, except .in subordination to the mortgage of the other parties.
These views of the case justify this court (there might be *279 others added if it were necessary to go further into the matter) fully in affirming the decree of the court below which determined that the whole' property should be sold, reserving to Mrs. Gray such portion of the proceeds of the sale as by the ascertainment of the auditor upon testimony as to the relative value between the two properties may be determined to be the value of her interest in said lot A. That is the utmost she is entitled to in equity, in law and in justice between man and man; which justice between man and man it is the duty of the court at all times to endeavor to carry out, unless some rule of law or arbitrary regulation or some consideration of public policy intervenes to prevent the attainment of that object. Courts of justice do not allow themselves to be trifled with in matters of that sort and do not allow the greed of parties to defeat the purposes of justice and the right and equity of matters if they can possibly prevent it.
The decree of the court below left open one matter for further consideration, which is no longer an open question in this court since the decision in the case of Keyser vs. Hitz. That matter is the disposition of the rents and profits of this property which have accumulated in the hands of the receiver. Since that decision, this court will hold, until reversed by some higher power, that wherever property subjected to a lien has been brought within the domain of a court of equity, and a receiver of that property is appointed, whatever rents and profits the receiver gets into his hands will be dedicated, along with the corpus of the fund, to the satisfaction of the lien after paying taxes, insurance and the like burdens.
The decree of the court below was, therefore, entirely right as far as it went, in directing that these rents and profits should be dedicated to the payment of insurances and taxes which had accrued and that they should be paid off out of that. The court reserved the consideration of what should be done with the residue of those rents and profits after the satisfaction of those burdens, declaring that it should await the further order of this court. In that respect *280 the decree will be reformed by directing that after the satisfaction of those charges, to be ascertained by the auditor, the residue of the rents and profits shall go to make up whatever deficiency there may he in the satisfaction of the corpus of the debt, by the proceeds of the sale of these two properties; recognizing, of course, under the circumstances, the right of Mrs. Gray to her share of the proceeds of sale according to the apportionment already indicated, but dedicating the rents and profits primarily to. the satisfaction of Pepper’s debt, along with the proceeds of the sale of the primary property upon which the house is built.
The testimony does not sustain the assertion that Mrs. Gray took her mortgage with an equitable or inxputed knowledge of the other one. We acquit her of actual knowledge and acknowledge her right to the corpus of suh-lot A, but the existence of those easements in and upon it and the indivisibility of the property, make it necessary that the whole should be sold as a unit in order to save loss to all parties, and this justifies the court in sustaining the court below upon the points named, and in making the subsequent disposition of the rents and profits after the satisfaction of the intervening liens.
The counsel will prepare a decree with the modification I have indicated, and the court will sign it. The order of the court dismissing Shepherd’s petition to he allowed to plead the Act of Limitations against a personal decree for the deficiency of Pepper’s debt, is also affirmed.